In the Matter of Grand Jury Witness Charles Joseph BATTAGLIA.

Charles Joseph BATTAGLIA, Witness, Appellant,

v.

UNITED STATES of America, Appellee.

No. 81–5339.

United States Court of Appeals, Ninth Circuit.

Submitted May 18, 1981.

Decided August 20, 1981.

Rehearing Denied Oct. 5, 1981.

Hirsh & Bayles, Tuscon, Ariz., for appellant.

Paul Corradini, Phoenix, Ariz., for appellee.

Before GOODWIN, ANDERSON and FERGUSON, Circuit Judges.

GOODWIN, Circuit Judge.

Charles Joseph Battaglia appeals a judgment of civil contempt. He was adjudged a recalcitrant witness for failing to answer certain questions before the grand jury, despite his claim that he was unable to remember the events in question.

In October 1978 Battaglia was indicted for mail fraud, conspiracy, and several drug-related offenses. In January 1979 he entered into a plea bargain pursuant to which he pleaded guilty to one count, the other counts were dismissed, and he agreed to testify as to the "involvement of Joseph Rae in the events underpinning the indictment."

The government first sought Battaglia's testimony in July 1979 when he was incarcerated at the United States Medical Center for Federal Prisoners at Springfield, Missouri. His testimony was postponed at the request of the prison officials because Battaglia was suffering from heart disease. During the summer and fall of 1979 the prison authorities continued to recommend that Battaglia not be required to testify.

After his release on parole, Battaglia was served with a subpoena to appear in May 1980 before the grand jury. He moved to quash the subpoena on the ground that the strain of testifying would endanger his life. Battaglia was examined by a government physician who agreed that there was a significant health risk. Consequently, although the district court refused to quash the subpoena, it ordered that Battaglia's physician be permitted to stand outside the grand jury room door and that the proceeding be halted at Battaglia's request.

Upon appearing before the grand jury on October 21, 1980, Battaglia stated that his memory was impaired by the drugs he had been taking for his heart condition, but he would try to answer the questions to the best of his ability. After a few minutes, Battaglia's physician informed the United States Attorney that it was unsafe for Battaglia to continue, and the proceeding was halted.

On December 4, 1980, Battaglia was ordered to submit written answers to questions propounded by the government in lieu of a personal appearance before the grand jury. The government propounded a set of 55 questions relating to Rae's involvement in a criminal scheme. In his written responses, Battaglia gave answers that failed to satisfy the government attorneys and they applied for an order to show cause why Battaglia should not be declared a recalcitrant witness under 28 U.S.C. § 1826.

At the hearing before the district court on the order to show cause, Battaglia argued that he had not been given notice of the answers which the government deemed insufficient. The court agreed and ordered the government to specify the answers with which it was not satisfied. Battaglia's supplemental answers stated in slightly greater detail his inability to remember. Battaglia also pointed out that an FBI report of an interview with him concerning the scheme was inconsistent with the transcript of surreptitiously recorded conversations of his also concerning the scheme. Because of the inconsistency, he stated it was difficult for him to remember what had actually transpired.

At a second hearing on the order to show cause the government argued that Battaglia had the burden of proving that his answers were truthful. The court apparently adopted the government's view of the burden of proof. In an attempt to comply with the court's understanding of the burden of proof, Battaglia presented testimony by a clinical psychologist and a clinical pharmacologist.

The psychologist, who had given Battaglia a battery of tests that morning, conclud-

ed that there was evidence of short-term memory impairment. He also found that Battaglia's overall mental capabilities had "substantially" slipped from his native ability. The psychologist did not find gross indications of remote memory loss, but testified that Battaglia did not do well on one portion of an examination which would indicate remote memory loss. The psychologist testified that he did not believe that Battaglia was malingering because an untrained person would not know which answers to which questions would produce a desired result.

The pharmacologist testified on the possible effects of the drugs Battaglia was taking, Inderal and Demerol. He testified that there is some indication that Inderal causes short-term memory loss. He also testified that the drug causes depression, a symptom of which is memory impairment. He specifically testified that there is a possibility, although not a probability, that Inderal will cause long-term memory loss.

The pharmacologist testified that Demerol is a narcotic that depresses the central nervous system. A depressant adversely affects the memory function of a person under its influence. Moreover, the witness said animal experiments had shown that Inderal and Demerol, when taken together, will have a greater effect than one would expect from the simple addition of their individual effects.

Subsequently, the court found Battaglia to be a recalcitrant witness pursuant to 28 U.S.C. § 1826 and ordered him confined until such time as he answered the questions in a nonevasive manner. The court concluded that Battaglia's claim of loss of memory was made in bad faith. It based its conclusion on the following facts: (1) Battaglia's personal physician did not testify as to memory loss; (2) Battaglia presented no evidence from family or friends that he was suffering from memory loss; (3) the expert testimony related only to short-term memory loss and the possibility, not probability, of long-term memory loss; (4) Battaglia did not stress the alleged memory problems until he was ordered to answer

the written questions; (5) Battaglia had no problem answering nonincriminating questions; and (6) Battaglia's demeanor on the stand was evasive.

### I. Applicability of the Statute

"Whenever a witness in any proceeding before ... [a] grand jury of the United States refuses without just cause shown to comply with an order of the court to testify ... the court ... may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony ...." 28 U.S.C. § 1826.

Battaglia contends that a witness' false assertion that he does not remember does not constitute a refusal to testify within the meaning of the statute, but is an act of perjury. As perjury, Battaglia argues, it can be punished as contempt only upon a showing, not made here, that the perjury obstructed the performance of the court's duties. *See Ex Parte Hudgings*, 249 U.S. 378, 39 S.Ct. 337, 63 L.Ed. 656 (1919); *Collins v. United States*, 269 F.2d 745, 750 (9th Cir. 1959), *cert. denied*, 362 U.S. 912, 80 S.Ct. 662, 4 L.Ed.2d 620 (1960).

■ A witness who testified that he does not remember an event can be convicted of perjury if it can be proven beyond a reasonable doubt that he does, in fact, remember the event. *United States v. Ponticelli*, 622 F.2d 985 (9th Cir.), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980). Battaglia assumes that this ends the inquiry. It does not. Wrongful conduct can be proscribed by more than one statute. Hence the real question is whether a false assertion of a lapse of memory constitutes a refusal to testify, in addition to setting the stage for a possible perjury prosecution.

■ The government cites no case that expressly holds that either general evasiveness or a false assertion of memory loss constitutes a refusal to testify within the meaning of 28 U.S.C. § 1826. In *Martin-Trigona v. Gouletas*, 634 F.2d 354 (7th Cir. 1980), the Seventh Circuit affirmed a district court order finding appellant to be a recalcitrant witness upon a finding that the asserted memory loss was false. The issue

in that case, however, appears to be whether the district court's finding of falsity was clearly erroneous, not whether the behavior was proscribed by 28 U.S.C. § 1826. *Id.* at 357. Nevertheless, we are satisfied that a false assertion of memory loss does constitute a refusal to testify.

Although 28 U.S.C. § 1826 is a relatively new statute, it was intended to codify the common law of civil contempt. *Gelbard v. United States*, 408 U.S. 41, 42 n. 1, 92 S.Ct. 2357, 2358, n.1, 33 L.Ed.2d 179 (1972); *United States v. Alter*, 482 F.2d 1016, 1022 (9th Cir. 1973). There are many cases predating the enactment of § 1826 that treat a false assertion of inability to answer as a refusal to answer. *See, e. g., Richardson v. United States*, 273 F.2d 144, 147 (8th Cir. 1959) ("Courts have recognized that testimony false and evasive on its face is the equivalent of refusing to testify at all.") *Life Music, Inc. v. Broadcast Music, Inc.*, 41 F.R.D. 16, 24 (S.D.N.Y.1966) ("A court ought not to be put off by transparent sham, and the mere fact that the witness gives some answer cannot be an absolute test." (quoting from *United States v. Appell*, 211 F. 495 (S.D.N.Y.1913)).)

Three important policy considerations argue for this construction of the statute. First, if an evasive answer were not equated with a refusal to answer, even the most transparently false assertion of "I don't remember" would be sufficient to avoid the recalcitrant witness statute. Second, even when a perjury prosecution would be appropriate, the government may be more interested in producing truthful testimony by use of § 1826 than in obtaining a criminal conviction for perjury. Third, the public, through our justice system, has a right to every person's evidence in our search for the truth. *See United States v. Nixon*, 418 U.S. 683, 709–710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). A concocted evasive or false "I don't remember" answer would provide an easy avenue for the reluctant witness to escape this high obligation with impunity.

## II. Sufficiency of the Evidence

Battaglia also contends that the evidence was insufficient to support the finding that he falsely asserted that he did not remember. We do not reach this question because the allocation of the burden of proof to Battaglia instead of to the government requires a remand.

■ In a civil contempt proceeding, the contempt must be proved by clear and convincing evidence. *United States v. Powers*, 629 F.2d 619, 626 n.6 (9th Cir. 1980). The standard appears to be higher than the preponderance of the evidence standard, applicable to most civil cases, but lower than the beyond a reasonable doubt standard, applicable to criminal contempt proceedings. *Id.*

■ A civil contempt proceeding on a witness' asserted memory loss requires a three-step analysis that shifts the burden of production to the witness, but always leaves the burden of proof with the government. First, the government must make a prima facie showing of contempt; i. e., that it made an authorized request for information, that the information was relevant to the proceedings, that the information was not already in the possession of the government, and that the witness did not comply. *See, e. g., United States v. Hankins*, 565 F.2d 1344, 1351 (5th Cir. 1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979).

Second, once the government has presented its prima facie case, the witness must provide some explanation on the record for his failure to comply. *See United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 318 (2nd Cir. 1979). If the witness fails to meet this "burden of producing evidence," the government's prima facie case is sufficient to meet its burden of proof for a finding of contempt. *See, N.L.R.B. v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612, 617–18 (9th Cir. 1973). The witness may meet his burden, however, where, as here, he testifies that he does not remember the events in question.[1]

---

1. The manner by which a witness may meet his burden of production will depend upon the rea-

son given for his inability to comply. For example, a witness who claims that he cannot

Finally, if the witness meets his burden of production by claiming a loss of memory, the government must carry its burden of proof for a finding of contempt by demonstrating that the witness in fact did remember the events in question, thereby establishing a willful failure to comply. *See, United States v. Hansen Niederhauser Co., Inc.*, 522 F.2d 1037, 1040 (10th Cir. 1975); *United States v. Rizzo*, 539 F.2d 458, 465–66 (5th Cir. 1976); *United States v. Silvio*, 333 F.Supp. 264, 266–67 (W.D.Mo.1971); *see generally, Mullaney v. Wilbur*, 421 U.S. 684, 703 n.31, 95 S.Ct. 1881, 1892, n.31, 44 L.Ed.2d 508 (1975).

In *N.L.R.B. v. Trans Ocean Export Packing, Inc., supra*, at 616, we said:

"[A]lthough inability to comply with a judicial decree constitutes a defense to a charge of civil contempt, . . . the federal rule is that one petitioning for an adjudication of civil contempt does not have the burden of showing that the respondent has the capacity to comply. . . . The contrary burden is upon the respondent. To satisfy this burden the respondent must show 'categorically and in detail' why he is unable to comply. . . . Since the Board did not have the burden of proof as to respondents' ability to comply, it was under no obligation to allege such ability in its petitions to this court."

*Trans Ocean* can be distinguished, however, because the respondent in *Trans Ocean* presented no proof of his inability to comply with the order. Consequently, the *Trans Ocean* court may have been referring to the burden of production rather than the burden of persuasion. By contrast, Battaglia has explained why he cannot comply. The quoted passage from *Trans Ocean* was in response to respondent's erroneous contention that the government bore the burden of pleading and proving in its prima facie case that respondent possessed the ability to comply with the order. Battaglia makes no such contention here.

Other courts have held that in a contempt proceeding, where the defendant introduces evidence of inability to comply, the government has the burden of proving ability to comply. *See, e. g., United States v. Rizzo*, 539 F.2d 458 (5th Cir. 1976); *United States v. Silvio*, 333 F.Supp. 264, 267 (W.D.Mo. 1971). *See also United States v. Hankins*, 565 F.2d 1344, 1351–52 (5th Cir. 1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1218, 59 L.Ed.2d 457 (1979) (dictum). These cases are consonant with the analogous principle of criminal law that although the government does not have the burden of disproving the existence of every conceivable affirmative defense, it does have the burden of disproving the existence of affirmative defenses actually raised. *See, e. g., United States v. Hearst*, 563 F.2d 1331 (9th Cir. 1977); *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978); *United States v. Carrasco*, 537 F.2d 372 (9th Cir. 1976).

■ The government may satisfy its burden of proof by establishing by clear and convincing evidence that the witness' claimed inability to remember is not credible. Apparently, the government introduced no affirmative evidence that Battaglia recently had told anyone about the scheme, or that his medications do not, in fact, affect long-term memory. *Cf. United States v. Cooper*, 465 F.2d 451 (9th Cir. 1972) (by analogy, the government has the burden of persuasion with regard to an insanity defense and must introduce affirmative evidence attacking the defendant's case).

■ The district court based its judgment almost exclusively on the gaps in Battaglia's proof; i. e., on the failure of family, friends, or Battaglia's personal physician to testify, on the expert witnesses' failure extensively to testify with regard to long-term memory loss, and on Battaglia's evasive demeanor. These are all legitimate considerations for a trier of fact, but the location of the burden of proof emphasizes

recall a particular fact or event may explain his inability to comply "categorically and in detail" by testifying on the record that he does not remember. The witness has then offered as

clear and detailed an explanation as possible for his inability to comply without exceeding the limits of faulty memory.

their importance. We do not, however, disparage the trial judge's power to decide all issues of credibility.

By placing the burden of persuasion on Battaglia, the district court made the gaps in Battaglia's proof more damaging than the gaps in the government's proof. This was error.

The cause is remanded for further proceedings in the district court with the burden of proving contempt remaining at all 'times upon the government.

Vacated and remanded.