## In re Paul A. BILZERIAN, Debtor.

### No. 01–00076–8W7.

United States Bankruptcy Court,
M.D. Florida.
Tampa Division.

June 28, 2001.

---

See also: 112 F.Supp.2d 12.

James E. Foster, Akerman, Senterfitt & Eidson, P.A., Orlando, FL, for Debtor.

Judith R. Starr, Assistant Chief Litigation Counsel, Securities and Exchange Commission, Washington, DC, for Securities and Exchange Commission.

Philip V. Martino, Piper, Marbury, Rudnick & Wolfe, Tampa, FL, for the Receiver.

Deborah R. Meshulam, Receiver, Piper, Marbury, Rudnick & Wolfe, Washington, DC.

## *MEMORANDUM OPINION AND ORDER DENYING DEBTOR'S MOTION TO STAY ORDER OF DISMISSAL*

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

This case came on for consideration on the motion ("Motion to Stay") (Doc. No. 57) filed by the debtor, Paul A. Bilzerian ("Debtor" or "Bilzerian") seeking to stay this court's order of February 9, 2001, dismissing this Chapter 7 case ("Dismissal Order") (Doc. No. 28).[1] In considering the Motion to Stay, the court has considered the entire record, including the response filed by the Securities and Exchange Commission ("SEC") and Deborah R. Meshulam, as receiver ("Receiver") (Doc. No. 59) and the Debtor's reply to the SEC's and Receiver's response ("Debtor's Reply") (Doc. No. 64).

■ In determining whether to grant a stay pending appeal, the court must consider four criteria:

(1) Whether the movant has made a showing of likelihood of success on the merits;

(2) Whether the movant has made a showing of irreparable injury if the stay is not granted;

(3) Whether the granting of the stay would substantially harm. the other parties; and

(4) Whether the granting of the stay would serve the public interest.

*In re Dale Mabry Properties, Ltd.,* 149 B.R. 209 (M.D.Fla.1992) (Merryday, J.).

■ The moving party must show satisfactory evidence on all four criteria. *In re Lykes Bros. Steamship Co., Inc.,* 221 B.R. 881, 884 (Bankr.M.D.Fla.1997). The failure to satisfy one prong of the standard for granting a stay pending appeal "dooms his motion." *Id.* (*quoting from Green Point v. Treston,* 188 B.R. 9, 12 (S.D.N.Y. 1995)).

For the reasons set forth below, the Motion for Stay will be denied.

### A. *Likelihood of Success on the Merits.*

Bilzerian has pointed to "four substantial issues on appeal." These issues are: (1) Whether the court's decision improperly limits access to the bankruptcy courts; (2) whether the court erred when it ap-

---

1. The findings of fact and conclusions of law which constitute the grounds for the Dismissal Order are set forth in the court's memorandum opinion ("Memorandum Opinion") of February 16, 2001 (Doc. No. 29). *In re Bilzerian,* 258 B.R. 850 (Bankr.M.D.Fla.2001).

plied collateral estoppel to a civil contempt order; (3) whether the court erred when it found that this case was filed solely as a result of the order appointing receiver; and (4) whether the court erred when it determined that the Debtor's desire to stay the collection effort of a creditor was "cause" for dismissal under section 707(a).

*(1) Whether the Court's Decision Improperly Limits Access to the Bankruptcy Courts.*

■ The basis for the Debtor's arguments with respect to this issue is that this court's decision improperly limits access to the bankruptcy courts by utilizing the provisions of section 707(a) to dismiss this case "for cause."

The Debtor argues that section 707(a) should only be applied when there are instances of post-petition conduct similar to those specifically enumerated in that section. That is, non-payment of fees, unreasonable delay by the debtor which prejudices the creditors, or failure to provide information required by the Bankruptcy Code. *11 U.S.C. § 707(a).* Essentially, the Debtor urges this court to apply the canon of construction, *"expressio unius est exclusio alterius* [2]*"* and only apply section 707(a) when there is misconduct of the Debtor that occurs **after** the filing of the bankruptcy.

This court indeed applied a more expansive interpretation to section 707(a) than that urged by the Debtor. The reason for this court's interpretation of section 707(a) is twofold. First, as specifically provided for in section 102(3) of the Bankruptcy Code, a basic rule of construction in bankruptcy is that the word "including" as used in section 707(a) is not meant to be a limiting word.

Secondly, the Debtor cites no precedent interpreting section 707(a) consistent with his interpretation. Rather, the Debtor argues that none of the factors relied upon by this court in dismissing his case would have justified dismissal of this case under Chapter VII of the Bankruptcy Act of 1898 citing as authority the 14th edition of Collier on Bankruptcy which interpreted bankruptcy law under the statute in effect prior to the enactment of the Bankruptcy Code.[3] In fact, no circuit court has reached a similar conclusion as that advanced by the Debtor in his interpretation of section 707(a). Rather, the circuit court decisions dealing with this issue have uniformly rejected the Debtor's narrow construction. *See, e.g., Industrial Insurance Services, Inc. v. Zick (In re Zick),* 931 F.2d 1124 (6th Cir.1991); *Huckfeldt v. Huckfeldt (In re Huckfeldt),* 39 F.3d 829 (8th Cir.1994); *Neary v. Padilla (In re Padilla),* 222 F.3d 1184 (9th Cir.2000).

Additionally, in light of the interpretation given to section 707(a) by the Sixth, Eighth, and Ninth Circuits, the court is persuaded that the Debtor's very restrictive view would not be adopted by the Eleventh Circuit if it dealt with this issue. Indeed, there is Eleventh Circuit precedent that applies the "bad faith" standard to the dismissals of chapter 11 and 13 cases under similar statutory schemes. *See, e.g., In re Phoenix Piccadilly,* 849 F.2d 1393 (11th Cir.1988) (bad faith dismissal of chapter 11 case) and *In re Waldron,* 785 F.2d 936 (11th Cir.1986) (bad faith dismissal of chapter 13 case).

*(2) Whether the Court Erred When It Applied Collateral Estoppel to a Civil Contempt Order.*

■ The next issue raised by the Debtor is that collateral estoppel was incorrect-

---

**2.** "The expression of one thing is the exclusion of another." *Black's Law Dictionary* 1635 (7th ed.1999).

**3.** Effective to bankruptcy cases filed after October 1, 1979.

ly applied by this court. Indeed, a number of the findings set forth in the Memorandum Opinion were made based on the collateral estoppel effect of findings made by District Judge Stanley Harris of the United States District Court for the District of Columbia ("D.C. District Court") in his order[4] finding Bilzerian in contempt ("Contempt Order").

■ In this regard, one of the essential elements that has to be satisfied in order for collateral estoppel to be applicable to prior findings by another court is that the burden of persuasion in the subsequent action cannot be significantly heavier than the prior action. *Securities and Exchange Commission v. Bilzerian*, 153 F.3d 1278, 1281 (11th Cir.1998).

The Debtor asserts that the use of collateral estoppel in these circumstances is improper because of his perception that there is a difference in the burdens of persuasion involved in the two proceedings. The Debtor's argument on this point is unpersuasive for two reasons. First, the findings that are contained in this court's Memorandum Opinion that are based on the collateral estoppel effect of the findings of Judge Harris in the Contempt Order were not critical and necessary to this court's conclusion that "cause" exists to dismiss this case. The findings critical to this court's conclusions, none of which are based on collateral estoppel, are the following[5]:

1. Of the approximately $139,762,828.17 of debt listed in Bilzerian's schedules, $130,650,328.17 is owed on account of the nondischargeable debts owed to the SEC and one other creditor. Another $9 million is owed to the Internal Revenue Service which, subject to certain narrow exceptions, would be nondischargeable under section 523(a)(1).[6]

2. In the schedules initially filed in this case, Bilzerian listed no assets available for creditors. That is, this is a "no asset" case.

3. Bilzerian's own words also reflect his perspective and motives for filing this case:

(a) "[I]t shouldn't be a shock to anybody that I...have no reason, I mean, to dedicate my life to trying to earn money all of which would go to basically pay a judgment that I don't believe, with all due respect to the Court, should have been entered in the first place."

(b) "So that there will never be a misunderstanding on this point, I wish to make it crystal clear, for so long as I draw a breath, no matter how long it takes, no matter whether I reside in a prison cell or a rat-infested apartment or the largest mansion in the world, I will never, ever rest until the truth of my case is published for all the world to see."

4. The only real question is in what court these issues will be litigated. This court certainly has jurisdiction to deal with the same assets being pursued by the SEC and Receiver in the D.C. District Court. Certainly, Bilzerian would prefer that this court be the court that determines the outcome of any such litigation. That is why he filed here.

5. On the other hand, things have not gone well for Bilzerian in the D.C. District Court. He has been held in con-

---

4. *SEC v. Bilzerian,* 112 F.Supp.2d 12 (D.D.C. 2000).

5. Memorandum Opinion, at 17–21.

6. The inference drawn by this court in the Memorandum Opinion from these facts is that Bilzerian did not file his chapter 7 bankruptcy case to get a "fresh start."

tempt. He has been incarcerated. Obviously, he desires to change the venue in which the issues raised by the SEC and Receiver will be decided. The question then is—should the door to this court be open to Bilzerian as the next step in his litigation strategy?

6. A federal court receivership is already in place for the purposes of marshaling and liquidating Bilzerian's assets. Functionally, the Receiver will be acting as a Chapter 7 trustee and has been granted broad powers to accomplish her objectives under the control of a federal district court judge—the same judge that has vast familiarity with the background of this case—having presided over the case for approximately ten years.

7. Significantly, there is no creditor opposition to dismissal of the case so that the receivership can continue to conclusion. All parties that appeared and took a position at the hearing, other than Bilzerian, supported dismissal of the case.

8. Clearly, the only reason this case was filed was because of the SEC's collection efforts. While Bilzerian attempted to convince the court that this case was filed because of litigation with a creditor other than the SEC, this argument was simply not credible. This is clear from all of the facts and circumstances. For example, the only creditor that received immediate notice of his filing was the SEC through a letter sent to them on the day the case was filed.

9. It is also no coincidence that at the time of this filing, Bilzerian's impending incarceration was looming. The obvious inference was that he hoped the bankruptcy stay would prevent that incarceration, as he argued unsuccessfully to the D.C. District Court.

While this court did apply collateral estoppel in making a number of other findings referred to in the findings of fact set out in the Memorandum Decision, the facts considered critical and necessary to reaching the conclusions as to "cause" as set forth above were not based on collateral estoppel. Rather, all of these facts were established by other means, such as judicial notice, admissions by a party, res judicata or the testimony of Bilzerian.

■ Furthermore, even as to the other findings included in this court's findings of fact, the Debtor's arguments are unpersuasive. That is, it was entirely appropriate to make those findings based on the Contempt Order by applying the doctrine of collateral estoppel.

The main thrust of the Debtor's argument is that in the civil contempt proceeding that led to the Contempt Order, *he* (and not the SEC) had the burden of persuasion and this burden was significantly higher than the "preponderance of evidence" required of the SEC under section 707(a). He cites as support the Contempt Order that states "[o]nce the SEC has made a prima facie showing that Bilzerian did not comply with the Court's orders, the burden shifts to Bilzerian to *produce* evidence justifying his noncompliance." 112 F.Supp.2d at 16 (emphasis added and internal citations omitted). The Debtor goes on to cite that his burden, according to the D.C. District Court, was to "substantiate his inability to comply with the Court's orders 'categorically and in detail.'" *Id.*

■ However, the Debtor has a fundamental misunderstanding about his burden in the contempt proceeding. The Contempt Order specifically noted that the Debtor "bears *the burden of production* (emphasis added)" on his defense against a finding of contempt on the grounds that he

is unable to comply with the orders. *Id.*[7] The court's reference in the Contempt Order that the Debtor "substantiate his inability to comply .... 'categorically and in detail' " refers to his *burden of production.* This is entirely consistent with the law on civil contempt.

■■ A civil contempt proceeding can be viewed as a three-step process that shifts the burden of production but always leaves the burden of persuasion with the moving party. *Battaglia v. U.S.,* 653 F.2d 419, 422 (9th Cir.1981) (*"Battaglia "*). The party seeking a finding of civil contempt bears the *burden of proof* by a clear and convincing standard. *Chairs v. Burgess,* 143 F.3d 1432, 1436 (11th Cir.1998) (*"Chairs "*); *Battaglia,* 653 F.2d at 422. Once this prima facie showing of a violation is made, then the *burden of production* shifts to the defendant "to produce evidence explaining his noncompliance." *Chairs,* 143 F.3d at 1436; *Battaglia,* 653 F.2d at 422. The defendant may not merely assert an inability to comply, he must substantiate the inability "categorically and in detail" and show that he has "made in good faith all reasonable efforts to comply." *Contempt Order,* 112 F.Supp.2d at 16–17 (internal citations omitted). Then if the burden of production is met, the movant must carry its burden of proof to refute this inability. *Battaglia,* 653 at 423.

The burden of *production* is high because if the burden of production were satisfied by mere assertions, very few, if any, persons would be held in civil contempt—rendering meaningless the court's ability to enforce its orders. The Debtor

fails to recognize that while the burden of *production* may shift, the burden of *persuasion* or burden of *proof* is always on the moving party seeking a finding of civil contempt. That burden of proof or persuasion never shifts. *Commodity Futures Trading Commission v. Wellington Precious Metals, Inc.,* 950 F.2d 1525, 1529 (11th Cir.1992); *Battaglia,* 653 F.2d at 422 ("courts have held that in a contempt proceeding, where the defendant introduces evidence of inability to comply, the government has the burden of proving ability to comply") (internal citations omitted).

Accordingly, this court does not find merit in the Debtor's argument that collateral estoppel was incorrectly applied because he had a different or higher burden in the Contempt Proceedings even if the findings that were based on collateral estoppel had been critical and necessary to this court's finding that "cause" existed to dismiss this case.

*(3) Whether the Court Erred When It Found That This Case Was Filed Solely as a Result of the Order Appointing Receiver.*

■ Indeed, this court found that it was clear that the only reason this case was filed was because of the SEC's collection efforts. Memorandum Opinion, at 21. The Debtor's motive or purpose in filing the case was a part of this court's analysis of the facts and circumstances leading up to the filing of this case. Whether the debtor's motive or purpose were consistent with the purpose of chapter 7, that is, to provide an honest debtor with a fresh start in exchange for the debtor's handing over to a trustee all of the debtor's non-exempt

---

7. The " 'burden of proof' signifies the duty or obligation of establishing, in the mind of the trier of facts, conviction on the ultimate issue. It is the duty of the person alleging the case to prove it, rather than the duty of one party or the other to introduce the initial quantum of

evidence on an issue; the latter burden is an alternative concept referred to as the burden of production or the burden of going forward with the evidence." *Moore's Federal Practice* § 132.02[4][a] (3d Ed.2000).

assets for liquidation for the benefit of the debtor's creditors, played an important role in this court's determinations.

In this regard, this court found most persuasive the fact that the only creditor that received immediate notice of the Debtor's filing was the SEC through a letter sent to them on the day the case was filed. It is also no coincidence that at the time of this filing, Bilzerian's impending incarceration was looming. The obvious inference was that he hoped the bankruptcy stay would prevent that incarceration, as he argued unsuccessfully to the D.C. District Court.[8]

In fact, it can also be concluded that the filing of the instant Motion to Stay was motivated by the SEC's collection efforts. As stated in the Debtor's Reply, "The fundamental reason and benefit for filing a bankruptcy petition is for the breathing room that the automatic stay provides."[9] Clearly, the ongoing collection efforts by the SEC continue to be the reason the Debtor seeks the protection afforded by the automatic stay if this case were not dismissed and the Debtor were successful in resisting the SEC's motion for relief.[10]

*(4) Whether the Court Erred When It Determined That the Debtor's Desire to Stay the Collection Effort of a Creditor Was "Cause" for Dismissal Under Section 707(a).*

While this court did consider as a factor in dismissing this case that it was filed because of the SEC's collection efforts, this was part of the overall analysis of "all of the facts and circumstances leading up to the filing of this case. . . ."[11] Clearly, this was not the sole basis for this court's conclusions—just one among numerous factors considered.

Based on the foregoing, it is the conclusion of this court that Bilzerian has not satisfied his burden of demonstrating that there is a substantial likelihood that he will succeed on the merits of his appeal.

## B. *Irreparable Harm to be Suffered by the Debtor Absent a Stay.*

■ This is not a situation where a debtor is seeking to reorganize under chapter 11 in this court as an alternative to having his assets liquidated in a nonbankruptcy court receivership. This is simply a question as to which court oversees the liquidation of the Debtor's assets and the right to pursue certain assets in the hands of third parties in satisfaction of the Debtor's debts. As noted in the Memorandum Decision, "The only real question is in what court these issues will be litigated."[12] Indeed, if the Debtor has suffered harm it is not because of forum in which his rights will ultimately be adjudicated, but rather the fact that the debt owed to the SEC in excess of $60 million has been declared to be nondischargeable.[13]

---

8. The D.C. District Court correctly rejected this argument since the exercise of that court's contempt powers under the circumstances of this case clearly fell within the "police power" exception to the automatic stay. 11 U.S.C. § 362(b)(4); *SEC v. Bilzerian*, 131 F.Supp.2d 10 (D.D.C.2001).

9. Debtor's Reply at 6.

10. In this regard, it is important to note that this court also noted in the Memorandum Opinion, "While this ruling moots the other relief requested, the court finds that this record would also support a finding in favor of Movants with respect to the other relief requested in the Motion to Dismiss," which included a request for relief from the automatic stay.

11. Memorandum Opinion, at 16.

12. Memorandum Opinion, at 19.

13. *In re Bilzerian*, 153 F.3d 1278 (11th Cir. 1998).

### C. *Harm Resulting from the Imposition of a Stay.*

■ As referenced in the SEC's response to the Motion for Stay, the collection efforts with respect to potentially recoverable assets to satisfy the Debtor's creditors has been proceeding in earnest. The Debtor has not demonstrated that stopping these ongoing collection efforts will not result in harm to the SEC by the attendant delays and disruption that will be caused by the imposition of the automatic stay and the replacement of the Receiver with a Chapter 7 trustee unfamiliar with the substantial work already conducted in the ongoing receivership.

Contrary to the Debtor's assertions, it appears that the stay of this court's order dismissing the Debtor's chapter 7 will impede the ongoing collection efforts with resulting harm to the SEC.

### D. *Considerations of the Public. Interest.*

■ As the SEC points out, the Debtor is a convicted felon with approximately $139,000,000 in non-dischargeable debts who has already spent eight years as a debtor in a prior chapter 7 case, who has been found in contempt of court, and who is presently incarcerated because the D.C. District Court has found that he has not purged that contempt. He is being pursued in the District Court Action by the SEC which is charged with enforcing the federal securities laws and the Receiver who has been appointed by the D.C. District Court to assemble all assets in which the Debtor may have an interest for the satisfaction of his creditors.

The court is not persuaded that under these circumstances it would be in the public interest to stop the efforts of the SEC and the Receiver from pursuing these assets in the D.C. District Court—

the forum in which the Debtor has been litigating for the past ten years.

### *Conclusion*

For the foregoing reasons, the court finds that the Debtor has failed to make the showing required for the entry of an order staying the Dismissal Order. Accordingly, it is

ORDERED that the Motion to Stay is denied.