In re Paula LICKMAN, Debtor.

Marie E. Henkel, Trustee, Plaintiff,

v.

Paula Lickman, et al., Defendants.

Bankruptcy No. 98–02632–6W7.
Adversary No. 01–170.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Nov. 25, 2003.

**740**

Lynnea Concannon, Sean D. Concannon, Orlando, FL, for Plaintiff.

Marie E. Henkel, Orlando, FL, Chapter 7 Trustee.

Gerald J. D'Ambrosio, Boca Raton, FL, for Defendant.

### ORDER AND MEMORANDUM DECISION DENYING MOTIONS FOR STAY PENDING APPEAL

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

This adversary proceeding came on for hearing on September 12, 2003, of motions for stay pending appeal and supporting legal memoranda (Document Nos. 211, 212, 222, and 223) filed by Robert Dizak a/k/a Robert Daniels ("Daniels"), Paula Lickman ("Lickman" or "Debtor"), Gerald J. D'Ambrosio ("D'Ambrosio"), and James F. Wiley, III ("Wiley") ("Defendants"). The motions seek to stay without bond the Plaintiff's execution on the money judgment entered jointly and severally against the Defendants on July 25, 2003 (Document No. 186) reported at *Henkel v. Lickman (In re Lickman)*, 297 B.R. 162, 208 (Bankr.M.D.Fla.2003) ("Sanctions Decision"). Following the hearing the Defendants filed additional papers in support of their motions (Document Nos. 224, 225, and 226). After careful consideration of the record, the parties' exhibits,[1] and the par-

---

**1.** At the hearing, the Plaintiff asked the court to take judicial notice of exhibits relating to the Defendants' motions for stay pending appeal. The court provided additional time to the Defendants to file written responses to the Plaintiff's exhibits or to file supplemental ex-
hibits for purposes of judicial notice. D'Ambrosio and Daniels filed legal memoranda with attached exhibits (Documents Nos. 225 and 226). Wiley objected to three of the Plaintiff's exhibits (Document No. 224). The court overrules Wiley's objections.

ties' oral arguments, memoranda of law, and relevant legal authorities, the court concludes that the motions must be denied.

### The Sanctions Decision.

In its July 25, 2003, Sanctions Decision the court found the Defendants liable for actions taken to assert or usurp control over property of the bankruptcy estate in violation of the automatic stay and this court's October 18, 1999, sanctions order. *Lickman*, 297 B.R. at 207. In extensive findings of fact and conclusions of law, supported by a lengthy appendix, the court found that the Defendants sought control over a fifteen percent residuary interest in a probate estate—including putative claims against the executrix—that the Debtor received within 180 days of her bankruptcy filing ("Probate Asset"). *Id.* at 171. The Defendants' actions occurred during two time periods.

This court found, based upon evidence contained in nearly 200 exhibits and testimony of six witnesses presented over a three day trial, that between August 1999 and April 2001, ("Phase I") Daniels, the Debtor, and D'Ambrosio waged an unremittingly aggressive campaign—through telephone calls, letters, newspaper advertisements, and disciplinary complaints made to the Florida Bar—to dissuade the trustee from administering the Probate Asset. *Id.* at 170–77. That campaign proved unsuccessful and the trustee ultimately sold the Probate Asset with approval and order of the court. *Id.* at 175. D'Ambrosio then filed an altered document with the bankruptcy court in an effort to hasten the closing of the bankruptcy case to clear the way for further litigation in other courts. *Id.* at 176.

This court concluded that Daniels, the Debtor, and D'Ambrosio violated the automatic stay in taking these actions and as-

The court may take judicial notice of "[s]pecific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily sources of indisputable accuracy." *Weaver v. United States*, 298 F.2d 496, 498–99 (5th Cir. 1962), *citing McCormick on Evidence*, Judicial Notice, § 323 at 688 (5th ed. rev.2003). The parties' exhibits fall into three categories.

The first category is documents that were admitted at trial and are part of the evidentiary record of this proceeding (Plaintiff's Exhibit Nos. 1, 2, 7, and 8, D'Ambrosio's Exhibit Nos. 1–12). The court construes the request for judicial notice as to this category, therefore, as directing the court's attention to specific parts of the record.

The second category is documents that were admitted in post-trial proceedings relating to the Debtor's and Wiley's actions taken in violation of its preliminary injunction (Plaintiff's Exhibit Nos. 3, 4, 5, 6, 10, 11, 13, 14). The court may always take judicial notice of its own record. *Matson v. Strickland (In re Strickland)*, 230 B.R. 276, 282 (Bankr. E.D.Va.1999). The court will therefore take judicial notice that these documents were admitted in a post-trial proceeding.

In that proceeding the court made weight and credibility determinations as to those documents and assessed sanctions against the Debtor and Wiley for their violations of the court's preliminary injunction ("August 19, 2002, sanctions order") reported at *Henkel v. Lickman (In re Lickman)*, 282 B.R. 709, 721 (Bankr.M.D.Fla.2002). The district court affirmed that decision. *Lickman*, 297 B.R. at 278. Although no party has made a request that the court take judicial notice of its August 19, 2002, sanctions order and the district court's order affirming, the court may do so of its own volition. F.R.Evid. Rule 201(c). Accordingly, the court takes judicial notice of both orders for the limited purpose of recognizing the "judicial acts" taken in the order and the subject matter of the litigation. *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir.1994).

The third category is documents that are not part of the record and that are offered in support of a disputed fact (Plaintiff's Exhibit Nos. 9, 12, and 16, Daniels' Exhibit Nos. A–F). "[I]ndisputability is a prerequisite" of judicial notice. *Id.* Accordingly, the court will not take judicial notice of these documents.

sessed sanctions against them. *Id.* at 207. The court also concluded that Daniels, the Debtor, and D'Ambrosio acted in concert in violating the automatic stay and were thus jointly and severally liable. *Id.* at 198–200.

The record established in this proceeding also makes clear that beginning in May 2001 and extending long after the trial concluded, Daniels, the Debtor, and Wiley sought to wrest control of the Probate Asset and its proceeds from the trustee and return it to the Debtor through collateral attacks in other courts ("Phase II"). *Id.* at 178–186. Between May and August 2001, Daniels, the Debtor, and Wiley filed and prosecuted litigation in the Pennsylvania state and district courts against the trustee and her attorneys seeking to void the trustee's sale of the Probate Asset and to obtain monetary damages for allegedly fraudulent acts taken by the trustee and her attorneys in connection with the sale. *Id.* at 178–79.

This court concluded that Daniels, the Debtor, and Wiley violated the automatic stay and this court's October 18, 1999, sanctions order by taking these actions and assessed sanctions against them. *Id.* at 207–08. The court further concluded that Daniels, the Debtor, and Wiley acted in concert in taking these actions and were therefore jointly and severally liable. *Id.* at 198–200.

Accordingly, as a result of the Defendants' actions, this court entered a permanent injunction enjoining Daniels, the Debtor, and Wiley from prosecuting pending collateral actions or filing future collateral attacks against property of the estate or the trustee and her counsel for their acts in administering the Debtor's bankruptcy estate. The court also imposed significant monetary sanctions against all

Defendants to compensate the estate for the harm resulting from their actions. The Defendants seek a stay of enforcement of the judgment.[2]

*Conclusions of Law on Motions for Stay Pending Appeal.*

■ A motion for stay pending appeal is an extraordinary remedy and requires a substantial showing on the part of the movant. *In re Running,* 1990 WL 53063 (N.D.Ill.). F.R.B.P. 8005 provides that the movant must first seek such relief in the bankruptcy court.

■ In determining a motion for stay pending appeal, the court must consider four factors. "These factors are (1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest." *Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir.1981). *See also In re Brown,* 290 B.R. 415, 424 (Bankr.M.D.Fla.2003); *In re Bilzerian,* 264 B.R. 726, 729 (Bankr.M.D.Fla. 2001). The movant must show "satisfactory evidence on all four criteria, and the failure to satisfy one prong is fatal to the motion." *Brown,* 290 B.R. at 424. The movant bears the burden of persuasion by a preponderance of the evidence. *Rossi, McCreery & Assoc., Inc. v. Abbo (In re Abbo),* 191 B.R. 680, 682 (Bankr.N.D.Ohio 1996).

**A.** *Likelihood of Success on the Merits.*

■ A showing that the movant has a likelihood of success on the merits is a prerequisite to the granting of a stay pending appeal. *In re Permian Producers*

---

**2.** The Defendants do not seek to stay the permanent injunction.

*Drilling, Inc.,* 263 B.R. 510, 515 (W.D.Tex. 2000). A "likelihood of success is shown when the [movant] has raised 'questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate inquiry.'" *Colorado Public Utilities Comm. v. Yellow Cab Cooperative Ass'n (In re Yellow Cab Cooperative Ass'n),* 192 B.R. 555, 557 (D.Co.1996), *quoting United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enterprise Management Consultants, Inc.,* 883 F.2d 886, 889 (10th Cir.1989).

The Defendants have raised eight issues on appeal relating to the court's entry of the money judgment against them (Document Nos. 209, 213, 214, and 215). These issues are:

1. Whether the court abused its discretion by considering the Defendants' post-trial conduct.

2. Whether the court exceeded the issues before it in assessing sanctions against the Defendants for acts taken in Phase I.

3. Whether the court erred in charging each of the Defendants with the conduct of other Defendants.

4. Whether the court erred in assessing attorney's fees against D'Ambrosio.

5. Whether the court abused its discretion in assessing sanctions against the Defendants for litigation pending in the Pennsylvania district court.

6. Whether the evidence supported the court's assessment of sanctions against the Defendants.

7. Whether the trustee had standing to sue the Debtor's attorneys and friend.[3]

8. Whether Judge Corcoran's denial of the Defendants' motion to disqualify was an abuse of discretion that constitutes reversible error.

### 1. *The Court Did Not Base Its Decision on the Defendants' Post–Trial Conduct.*

The court's decision contains a voluminous appendix that sets forth the evidentiary support on which it based its findings of fact and conclusions of law. *Lickman,* 297 B.R. at 208, App. I. The appendix contains entries of events that occurred through May 5, 2003—more than a year after the trial concluded. *Id.* The Defendants contend that in determining the issues at trial the court relied upon the Defendants' post-trial conduct as set forth in the appendix.

The Sanctions Decision, however, clearly identifies the events upon which the court determined the Defendants' liability. A review of the factual findings contained in the Sanctions Decision make clear that these events occurred prior to trial. For example, in Section II.A. of the Sanctions Decision, the court specifically states that Daniels, Lickman, and Wiley are liable for actions taken between August 13, 1999, and August 7, 2001. *Id.* at 188–89. Again, in Section II.B of the decision the court determines that Daniels, the Debtor, and Wiley are liable for actions taken between May 24 and August 7, 2001. *Id.* at 201. Thus, each of the actions upon which the court bases its determination that the Defendants violated the automatic stay and this court's October 18, 1999, sanctions order preceded the trial. *Id.* at 208. Accordingly, it is clear from a detailed review of the factual findings contained in the Sanctions Decision that the court did not

---

**3.** Daniels raises this issue for the first time in his post-hearing memorandum (Document No. 226).

assess sanctions for actions taken by the Defendants after the trial concluded.

The Sanctions Decision is less clear with respect to the events upon which the court bases its determination that the Defendants acted in concert in taking actions that violated the automatic stay and the court's October 18, 1999, sanctions order between April 2001 and October 2001. In support of its determination that Daniels, the Debtor, and Wiley acted in concert, the court refers to "Section I.D. and applicable acts" which arguably might include post-trial conduct. *Id.* at 199. The court, however, then goes on to discuss in detail actions that occurred before trial. *Id.*

Even if the court impermissibly relies upon events that occurred post-trial in determining that Daniels, the Debtor, and Wiley acted in concert in violating the automatic stay and the court's October 18, 1999, sanctions order, it does not rise to the level of a serious, substantial, difficult or doubtful attack on the merits of the court's decision. Instead, it would likely be harmless error because the Defendants' post-trial actions were merely a continuation of a well documented and sustained course of conduct that occurred prior to trial and for which the court made comprehensive findings all as set forth in the Sanctions Decision and its addendum.

### 2. *The Court Did Not Exceed the Issues Before It in Assessing Sanctions Against the Defendants for Acts Taken During Phase I.*

The court assessed sanctions in the amount of $17,958.18 on account of Daniels', the Debtor's, and D'Ambrosio's violations of the automatic stay during Phase I. *Id.* at 206. The Defendants argue that the court exceeded the issues before it in considering the Defendants' actions during Phase I, presumably because the precipitating event that caused the Plaintiff to

file the adversary proceeding—the Debtor's filing of an action in the Pennsylvania district court seeking monetary damages against the trustee and her counsel ("Pennsylvania damages action")—did not occur in Phase I.

Count II of the Plaintiff's complaint, however, clearly sought relief against Daniels, the Debtor, and D'Ambrosio for actions taken in Phase I that allegedly violated the automatic stay. (Document No. 1). Count III of the complaint sought relief for the actions taken after April 2001 that precipitated the Plaintiff's filing of the complaint. The Plaintiff's complaint was subsumed in the court's final pretrial order and the counts combined into one issue. *Lickman,* 297 B.R. at 182.

Even if this were not the case, the Defendants' actions in Phase I were properly before the court. The parties tried the issue by express or implied consent by putting on evidence and testimony concerning the Defendants' actions in Phase I. F.R.B.P. 7015, incorporating by reference F.R.Civ.P. 15(b). *Borden, Inc. v. Florida East Coast Railway Co.,* 772 F.2d 750, 757 (11th Cir.1985) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.").

### 3. *The Court Did Not Err in Charging Each of the Defendants with Conduct of Other Defendants.*

The court determined that Daniels, the Debtor, and D'Ambrosio acted in concert in violating the stay in Phase I and that Daniels, the Debtor, and Wiley acted in concert in violating the automatic stay and this court's October 18, 1999, sanctions order between April 2001 and October 2001. *Id.* at 198–200. The Defendants argue that the court improperly made these determinations as a means of punish-

ing each of the Defendants for Daniels' actions in placing newspaper advertisements seeking negative information to be used against the bankruptcy court and Judge Corcoran.

The court made findings of fact that supported its legal conclusion as to the common purpose and intent that the Defendants had in coordinating and taking individual actions that violated the automatic stay and the court's October 18, 1999, sanctions order. These findings are identified in the text of the decision and more comprehensively detailed in the appendix with citations to exhibits or testimony that support the findings. *Id.* at 209–278. The court's findings of fact are given substantial deference on appeal and are disturbed only if clearly erroneous. *Continental Securities Corp. v. Shenandoah Nursing Home Partnership*, 188 B.R. 205, 218 (W.D.Va.1995), *citing* F.R.B.P. 8013.

Although Daniels' placement of newspaper advertisements is clearly part of the cumulative pattern that the Defendants' various actions created, the decision cannot fairly be read to support the Defendants' theory that the court assessed sanctions against the Defendants on account of Daniels' placement of newspaper advertisements. Daniels' placement of newspaper advertisements is just one of many actions taken by the Defendants that the court concluded violated the automatic stay. It represented a small fraction of the conduct that gave rise to the sanctions awarded by the court. In fact, the court assessed sanctions in the amount of $17,598.18, for Daniels', the Debtor's, and D'Ambrosio's violations of the automatic stay in Phase I, of which only $247 was attributed to attorney's fees relating to Daniels' placement of newspaper advertisements—at best a deminimus amount in the context of the total sanctions imposed.

*Lickman*, 297 B.R. at 206 and 242. No part of the $17,420.32 in sanctions assessed for Daniels', the Debtor's, and Wiley's violations of the automatic stay and this court's October 18, 1999, sanctions order that occurred between May 2001 and the date of trial related to Daniels' placement of newspaper advertisements. *Id.*

### 4. *The Court Did Not Assess "Attorney's Fees" Against D'Ambrosio.*

The court assessed sanctions jointly and severally against the Defendants in the amount of $43,221.94, representing attorney's fees and costs incurred by the estate through October 31, 2001, in prosecuting this adversary proceeding. *Lickman*, 297 B.R. at 207. D'Ambrosio argues that the court should not have assessed this sanction against him because he was the successful litigant in this action. D'Ambrosio bases his contention that he was the successful litigant on the fact that the court excluded him from its permanent injunction. D'Ambrosio misconstrues the court's decision and judgment.

The court determined that the Plaintiff—not D'Ambrosio—was the prevailing party in this action and awarded costs on that basis. *Id.* at 206. In making that award, the court correctly applies the standard for prevailing party set forth in 10 J. Moore, *Moore's Federal Practice*, § 54.101[3] at 54–157 (3d ed.2000) as "the party in whose favor judgment in entered, even if that judgment does not fully vindicate the litigant's position in the case."

Moreover, the court did not award attorney's fees to the Plaintiff as the prevailing party. Instead, it assessed sanctions against the Defendants—including D'Ambrosio—for the harm to the estate caused by their wrongful actions. The award of $43,221.94 was measured by the costs incurred by the estate through October 31, 2001, in bringing the Plaintiff's claims

against the Defendants to trial. As set forth in the factual findings contained in the Sanctions Decision, D'Ambrosio's actions played a significant role in causing the expenses that resulted in the sanctions imposed. *Lickman,* 297 B.R. at 171–77, 193, 196, and 199.

### 5. *The Court Did Not Abuse Its Discretion in Assessing Sanctions Against the Defendants for Litigation Pending in the Pennsylvania District Court.*

Included in the sanctions that the court awarded jointly and severally against Daniels, the Debtor, and Wiley, for violations of the automatic stay and this court's October 18, 1999, sanctions order, was $12,798.12, representing attorney's fees and costs incurred by the estate relating to the Pennsylvania damages action.[4] *Lickman,* 297 B.R. at 206 and 245. The Defendants argue that the court abused its discretion by assessing these sanctions against the Defendants for litigation pending in the Pennsylvania district court. Although the Defendants did not elaborate on this issue at the hearing or in their papers, their argument appears to be that the Pennsylvania district court had jurisdiction of that action and was the appropriate venue to determine attorney's fees, if appropriate.

The Defendants' argument fails to recognize that the court found that the Debtor's filing of the Pennsylvania damages action violated the automatic stay and the *Barton* doctrine[5] and was therefore void. *Id.* at 192–93 and 207. Thus, the Pennsylvania district court has no jurisdiction to determine attorney's fees on behalf of the trustee and her counsel. *In re Benalcazar,* 283 B.R. 514, 521 (Bankr.N.D.Ill.2002) (the automatic stay places "jurisdiction in the bankruptcy court over all matters subject to the automatic stay, both withdrawing the jurisdiction of other tribunals until relief from the stay is obtained and rendering orders obtained in violation of the stay void.").

■ In addition, as noted above, the court did not award attorney's fees to the Plaintiff. It assessed sanctions against the Defendants for their violations of the automatic stay. "The bankruptcy court has exclusive jurisdiction to impose sanctions for violation[s] of the automatic stay." *Id.* at 521–23.

### 6. *The Evidence Supports the Court's Assessment of Sanctions Against the Defendants.*

The court made findings of fact that supported its assessment of sanctions against the Defendants. *Lickman,* 297 B.R. at 187, fn. 26. These findings are identified in the text of the Sanctions Decision and more comprehensively detailed in the appendix with citations to exhibits or testimony that support the findings. *Id.* at 209, App. 1. D'Ambrosio and Wiley contend that the court's findings fail to support its sanctions against them.

D'Ambrosio argues that the court made no findings that he had filed frivolous pleadings with the court. In support of his argument that such findings are necessary, he cites *Schwartz v. Millon Air, Inc.,* 341 F.3d 1220, 1228 (11th Cir.2003), a re-

---

4. This amount was included in the total sanctions amount of $17,420.32 assessed against Daniels, the Debtor, and Wiley for violations of the automatic stay taken between May 2001 and October 2001. *Id.* at 206. This amount was also included in the total sanctions amount of $17,173.32 assessed against Daniels, the Debtor, and Wiley for violations of the court's October 18, 1999, sanctions order between May 2001 and October 2001.

5. *Barton v. Barbour,* 104 U.S. 126, 26 L.Ed. 672 (1881).

cent case in which the court of appeals reversed an award of sanctions assessed pursuant to 28 U.S.C. § 1927. The court found that "unusual international circumstances" mitigated the attorney's actions in filing a fraudulent lawsuit. *Id. Schwartz* is inapposite for several reasons. First, it concerns a 28 U.S.C. § 1927 claim for vexatious litigation, a claim which is not at issue here. *Lickman,* 297 at 187, fn. 26. Second, the case presents a narrow exception, on facts that are distinct from the circumstances of this case, to an attorney's duty to make reasonable inquiry into the claims that he or she files in court.

In addition, the court did not need to find that D'Ambrosio's papers were frivolous because the actions for which he, Daniels, and the Debtor were sanctioned were external to the bankruptcy case. *Id.* The court did find, however, that D'Ambrosio knowingly and purposely filed a fraudulent paper with the bankruptcy court in support of its determination that D'Ambrosio shared a unity of purpose and acted in concert with Daniels and the Debtor to act in violation of the automatic stay. *Id.* at 199.

Wiley argues that the court made no findings that he acted with intent, reckless disregard, or malice. To the contrary, the court made findings that Wiley acted with intent and reckless disregard in violating the automatic stay. *Id.* at 190. Similarly, the court determined that Wiley acted intentionally, willfully, and in bad faith in violating this court's October 18, 1999, sanctions order. *Id.* at 202. Finally, the court found that Wiley acted for an improper purpose and in reckless disregard of his ethical obligations in its determination that Wiley shared a unity of purpose and intent with Daniels and the Debtor and acted in concert with them in violating the automatic stay and this court's October 18, 1999, sanctions order. *Lickman,* 297

B.R. at 200. The court's findings of fact are given substantial deference on appeal and are disturbed only if clearly erroneous. *Continental Securities Corp.,* 188 B.R. at 218.

### 7. *The Trustee has Standing to Sue the Debtor's Attorneys and Friend.*

■ Daniels asserts that the court erred in entering judgment against the Defendants because the trustee lacked standing to sue. He cites *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 117 (2nd Cir.1991) in support of his argument. In *Wagoner,* the court held that the trustee did not have standing to pursue claims that belonged to creditors rather than to the bankruptcy estate. *Id.*

Contrary to Daniels' argument, the claims in this action are not creditors' claims but are instead claims that belong to the estate. Section 323 of the Bankruptcy Code provides that the trustee is the representative of the estate and has the capacity to sue. Chapter 7 trustees, as representatives of the estate, routinely sue third parties for violations of the stay when their actions jeopardize or attempt to assert control over property of the estate. *Lickman,* 297 B.R. at 194 (collecting cases). The trustee, as representative of the estate, has standing to bring these claims against third parties—including the Debtor's attorneys and friend—to protect property of the estate.

### 8. *Judge Corcoran's Denial of the Defendants' Motions to Disqualify Was Not an Abuse of Discretion.*

Judge Corcoran entered four orders denying motions by the Defendants seeking his disqualification on account of bias reported at *Henkel v. Lickman (In re Lickman),* 288 B.R. 151, 154 (Bankr.M.D.Fla. 2003). In their later motions, the Defendants contended that Lynn Concannon's

appearance in this case established bias that necessitated the judge's disqualification. Lynn Concannon is named as a party by the Debtor in the Pennsylvania damages action and represents the trustee in this action. She was employed as Judge Corcoran's law clerk more than eleven years ago. Judge Corcoran found no basis for disqualification because Lynn Concannon's employment as his law clerk occurred long before the Debtor filed her bankruptcy case. *Id.*

■ Lickman and Wiley raised the court's bias as an issue in their appeal of this court's August 19, 2002, sanctions order. *Lickman,* 297 B.R. at 277. The district court affirmed the bankruptcy court's order and specifically found that the Defendants' allegations of bias were without merit. *Id.* at 278. Where the merits of the court's decision on any issue have been evaluated by another court, the movant seeking stay must "make a stronger threshold showing of likelihood of success to meet his burden." *In re Forty–Eight Insulations, Inc.,* 115 F.3d 1294, 1301 (7th Cir.1997).

Accordingly, the Defendants have failed to carry their burden of persuasion to show a likelihood of success on the merits on any of the issues that the Defendants have raised in their appeal of this court's Sanctions Decision.

B. *Irreparable Harm.*

■ The second factor that the movants bear the burden on is that they will suffer irreparable harm if a stay is not granted. The irreparable harm must be "neither remote nor speculative, but actual and imminent." *In re Dunes Hotel Associates,* 1997 WL 33344279 *4 (Bankr. D.S.C.1997), *citing Dan River, Inc. v. Icahn,* 701 F.2d 278, 284 (4th Cir.1983). "Mere injuries, however substantial, in terms of money, time, and energy neces-

sarily expended in the absence of a stay, are not enough." *Cunningham v. Adams,* 808 F.2d 815, 821 (11th Cir.1987). For example, the court in *Abbo,* 191 B.R. at 684, denied a motion for stay pending appeal finding that the monetary harm that the Debtor would suffer if plaintiff were to enforce its judgment was insufficient to establish irreparable harm.

Similarly, the Defendants here point only to the monetary harm that they will suffer if the Plaintiff executes on her judgment during the pendency of the appeal. The record is therefore devoid of facts that support the Defendants' contention that they will be irreparably harmed if a stay is not granted. Accordingly, the Defendants have failed to carry their burden of persuasion as to this factor.

C. *Harm to Appellee.*

■ This factor is the other side of the coin to irreparable harm. The court must measure the harm to the non-movant, here the Plaintiff, and balance the harm inuring to all parties. In *Arvay v. Hyman (In re Bob Hamilton Real Estate),* 164 B.R. 703, 705 (Bankr.M.D.Fla.1994), the court denied the appellants' motion for stay pending appeal finding that the granting of a stay would unduly delay administration of the bankruptcy estate. Likewise, in *Bilzerian,* 264 B.R. at 735, the court found that a stay pending appeal would harm the appellee by impeding ongoing collection efforts.

Contrary to the Defendants' assurance, the Plaintiff in this case will suffer similar harm if the court were to grant a stay pending appeal. The Plaintiff's collection efforts would be halted and administration of the bankruptcy case concomitantly affected. Accordingly, the Defendants have failed to carry their burden of persuasion as to this factor.

D.  *Public Policy.*

To establish this factor the movant must show that a stay would further the public interest.  *Brown,* 290 B.R. at 424.  The Defendants contend that a stay pending appeal would vindicate the public interest in having unfettered access to the courts.  The Defendants' contention rests on a tenuous basis that cannot support it.  First, this court has rejected the Defendants' argument that they can bring claims against the trustee and property of the estate in foreign courts.  The district court has affirmed the court's decision.  *Lickman,* 297 B.R. at 278.  Second, even if the court was to accept the Defendants' position (which it does not), a stay pending appeal would bring the Defendants no closer to the Pennsylvania courts than they are now because both the bankruptcy and district courts have issued injunctions enjoining certain of the Defendants from proceeding in foreign courts.  297 B.R. at 208 and 277–78.

██ On the other hand, there is a "great public policy in ensuring that this bankruptcy case continue to an orderly, efficient resolution to maximize and preserve the estate's assets."  *In re Bankruptcy Appeal of Allegheny Health, Education and Research Foundation,* 252 B.R. 309, 331 (W.D.Pa.1999).  Accordingly, the Defendants have not carried their burden of persuasion as to this factor.

### *Conclusion.*

For the reasons stated above the Defendants' motions for stay pending appeal without bond are denied.  However, if a Defendant wishes to stay the execution of the Plaintiff's judgment, a Defendant may post a supersedeas bond in the amount of the total judgment against that Defendant plus 20 percent to cover interest and costs.  Because the Defendants are jointly and severally liable on the judgment each De-fendant must post his own bond.  Accordingly, it is

ORDERED that the motions for stay pending appeal are denied without prejudice to the Defendants' posting a supersedeas bond.