**In re COMPASS MARINE SERVICES, INC., Debtor.**

**Compass Marine Services, Inc., Plaintiff,**

**v.**

**United States of America, Department of the Treasury, Internal Revenue Service, Defendant.**

**Bankruptcy No. 95–10457.
Adversary No. 01–1153.**

United States Bankruptcy Court, E.D. Louisiana.

April 15, 2002.

Bernard H. Berins, Heller, Draper, Hayden, Patrick & Horn, LLC, for Debtor.

Wendy Vann, Washington, DC, for United States and I.R.S.

## MEMORANDUM OPINION

JERRY A. BROWN, Bankruptcy Judge.

This proceeding comes before the court on the complaint of Compass Marine Services, Inc. ("Compass") seeking a judgment ordering the United States of America, Department of the Treasury, Internal Revenue Service ("United States" or "IRS") to reallocate tax payments to the trust fund portion of taxes paid by Compass. The parties agreed to submit the case for a decision on stipulated facts and briefs. The court finds in favor of Compass because the reallocation of tax payments is necessary for the success of Compass's plan of reorganization.

### I. *Findings of Fact*

#### A. *Stipulations of the parties*

The parties made the following stipulations:

1. On February 7, 1995, Compass filed for Chapter 11 relief.

2. On or about March 9, 1995, the IRS filed a proof of claim that reflected a secured claim of $1,718,757.76 for employment (FICA/withholding) taxes for the last quarter of 1992, all four quarters of 1993, and the first two quarters of 1994, as well as for unemployment (FUTA) taxes for the tax year 1993. The proof of claim further provided for an unsecured claim for employment (FICA/withholding) taxes for the last two quarters of 1994 and the first quarter of 1995, as well as for unemployment (FUTA) taxes for the years 1994 and 1995. The IRS amended its proof of claim on April 4, 1995 and March 21, 1996, but continued to assert liabilities for these same periods in secured amounts well in excess of the amounts in issue in this adversary proceeding.

3. In accordance with the order of this court dated October 10, 1995, Compass sold property consisting of 4.29 acres on the west bank of the Mississippi River in New Orleans to Elmwood Marine Services, Inc. Compass had acquired this property before the petition date.

4. Compass received the sum of $549,779.66 from the sale.

5. In accordance with the order of this court dated November 29, 1995, Compass sold property on Elmira Street and Opelousas Avenue in New Orleans to Patricia Ann Smith. Compass had acquired this property before the petition date.

6. Compass received the sum of $49,294.64 from the sale.

7. Compass received the total amount of $599,074.30 from both sales.

8. The properties were sold free and clear of all liens, mortgages and encumbrances, including the following liens in

favor of the United States, with the liens to attach to the sale proceeds:

A. Federal tax lien in the amount of $557,342.63, recorded on December 9, 1993.

B. Federal tax lien in the amount of $237,216.43, recorded on March 2, 1994.

C. Federal tax lien in the amount of $206,294.17, recorded on June 20, 1994.

D. Federal tax lien in the amount of $195,086.77, recorded on October 3, 1994.

E. Federal tax lien in the amount of $165,205.47, recorded on December 15, 1994.

(The liens are collectively referred to as the "federal tax liens").

9. The federal tax liens upon both properties primed the liens held by the State of Louisiana, Department of Employment Security ("DES") bearing against the properties.

10. The DES agreed that the sale proceeds should be paid to the IRS.

11. Compass paid the sale proceeds of $599,074.30 to the IRS on February 2, 1996.

12. The debtor's payment to the IRS was accompanied by a letter of instructions to the IRS, which directed the IRS to apply the payment to unpaid trust fund portions of Compass's tax liabilities and designated the specific liability for which the payment was to be applied.

13. Instead, the United States applied the payment of $599,074.30 to the employment (Form 941) tax liabilities of Compass as follows:

| Quarter ending | 3/31/1993 | 6/30/1993 | 9/30/1993 |
|---|---|---|---|
| Non trust fund taxes | $ 81,952.27 | $ 0.00 | $ 9,056.45 |
| Penalties | $103,770.15 | $58,564.90 | $61,337.98 |
| Interest | $ 49,701.28 | $22,975.73 | $24,111.51 |
| Trust fund taxes | $187,604.03 | $ 0.00 | $ 0.00 |

14. The Second Amended and Restated Chapter 11 Plan with Immaterial Modifications filed by Compass was confirmed by order entered on February 2, 1999.[1] The plan did not address the allocation of the IRS payment, except to state that the parties reserved their right to have a judicial determination of that at a later date.[2]

15. Under the plan, the court retained jurisdiction over proposed modifications to the plan and certain other matters as set forth in the plan.

B. *Additional findings of the court*

A review of the record discloses the following additional facts.

16. The Second Amended and Restated Chapter 11 Plan with Immaterial Modifications provided for Compass's reorganization. Compass continued its operations post-confirmation.[3]

17. Edward G. Conrad, Jr. and John F. Muller, who were responsible for collecting and paying the trust fund taxes for Compass, are the responsible parties here.[4]

1. Pl. 280 in Case No. 95–10457.

2. *See* Finding of Fact # 21, *infra* at 768.

3. *See* Pl. 280, Plan at § 3.1.

4. Plan at § 4.11.

18. Conrad owns 50% of the Compass stock. The remaining 50% is owned by Conrad's deceased wife. Conrad, individually, and as an executor and usufructuary, controls all of the stock in Compass.[5]

19. Both before and after the confirmation of the Compass plan, Conrad and his (current) wife were the only directors and officers of Compass. Conrad is the president, his wife is the secretary-treasurer.[6]

20. Compass's plan was confirmed without objection.

21. Section 4.11 of the plan provides in pertinent part:

[T]he Debtor and the Responsible Individuals reserve their rights outside of the Plan to have any court, including, at their option, the Court, make a judicial determination as to the appropriate allocation of payments made by the Debtor to the United States of America, Department of Treasury, Internal Revenue Service since February 7, 1995, that is between Trust Fund Taxes and non-Trust Fund Taxes.[7]

22. The plan and the record reflect the actions taken by Conrad to make the plan successful, including:

(a) *Section 3.1:* Before the confirmation of the plan, Conrad personally paid the IRS approximately $213,310.73 on account of Compass's tax debt.

(b) *Section 3.2:* RV Charters, Inc., RV River Charters, Inc., Personal & Confidential, Inc., and Miss Nari, Inc., each of which is an affiliate of Compass ("Guaranty Affiliates") guaranteed all of the payments required of Compass un-

der the plan, other than the Unsecured Notes (as defined in Section 4.8.3 of the plan).

(c) *Section 4.8.3:* The Guaranty Affiliates and Conrad guaranteed Compass's obligations under the Unsecured Notes.[8]

(d) *Section 4.8.3:* RV Charters, Inc. and Miss Nari, Inc. agreed that they will not sell or encumber any of the stock that they own in River Barge Excursion Lines, Inc. until all of the Unsecured Notes are paid.[9]

(e) *Section 15.5:* After plan confirmation, Conrad will work for Compass for $50,000 per year, his son, Charles Conrad, will work for $31,000 per year, and his wife will work for Compass, but will not be paid a salary until all of the creditors that were non-Compass affiliates, including the IRS, have their claims fully satisfied.[10]

## II. *Conclusions of Law*

### A. *Jurisdiction*

The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157.

### B. *Statutory scheme*

■ Trust fund taxes are those personal income and social security taxes that employers are required to withhold from employees' paychecks.[11] After being withheld, the taxes are to be held "in trust" for the United States.[12] If an employer fails to pay the taxes, the IRS has the right to collect the amount from the corporate officer responsible for the nonpayment, known

---

5. Pl. 248 in 95–10457, Second Amended and Restated Disclosure Statement, at Article V.

6. Disclosure Statement at Article VI.

7. Plan at § 4.11

8. Plan at 14.

9. Plan at 15.

10. Plan at 23. *See also* Disclosure Statement, at 15.

11. 26 U.S.C. §§ 3102(a), 3402(a).

12. 26 U.S.C. § 7501(a).

as the "responsible person."[13] To ensure that payment to the United States will, in fact, be made, liability under 26 U.S.C. § 6672 is not dischargeable in bankruptcy.[14] The responsible person's liability under Section 6672 is not penal in nature, but is a means of ensuring that withholding taxes are paid.[15]

The IRS permits taxpayers who make voluntary payments of tax debt to designate the tax liability to which the voluntary payments will apply.[16] If, however, no designation is made or if the payment is made involuntarily, the IRS does not permit the taxpayer to designate the allocation, and will decide how to apply the payment, which will almost always be to apply the payment to a non-trust fund tax debt first.[17] An involuntary payment is traditionally defined as "any payment received by agents of the United States as a result of distraint or levy *or from a legal proceeding* in which the Government is seeking to collect its delinquent taxes or file a claim therefore." [18]

### C. *Designation Necessary to the Success of a Reorganization Plan*

Compass seeks to require the United States to reallocate the payment of $599,074.30 made by Compass so that all of it is allocated to the trust fund portion of the taxes due by Compass.

Compass first argues that the bankruptcy court has the authority to order the IRS to allocate the payment to extinguish trust fund taxes regardless of whether the payment was voluntary or involuntary. Citing the case of *U.S. v. Energy Resources Co., Inc.*,[19] Compass argues that the bankruptcy court has the authority to order the IRS to treat tax payments made by a Chapter 11 corporation as trust fund payments where the court determines that the designation is necessary for the success of the reorganization plan.

The IRS argues that the court in deciding this question can only consider the stipulated facts, and that Compass relies on facts not included in the stipulation.

The court agrees only in part with the IRS's position. In reaching a decision, the court may consider not only the parties' stipulations, but may also consider facts that are contained within the record of the case, including the confirmed plan of reorganization.[20] This case has been in Chapter 11 for seven years—four years

---

13. 26 U.S.C. § 6672.

14. *See* 11 U.S.C. §§ 523(a)(1)(A), 507(a)(7)(C).

15. *In re Suburban Motor Freight, Inc.*, 161 B.R. 640, 642 (S.D.Ohio 1993)

16. *U.S. v. Energy Resources Co., Inc.*, 495 U.S. 545, 548, 110 S.Ct. 2139, 2141, 109 L.Ed.2d 580 (1990), *citing*, Rev.Rul. 79–284, 1979–2 Cum.Bull. 83, 1979 WL 51035, *modifying* Rev.Rul. 73–305, 1973–2 Cum.Bull. 43, 1973 WL 32999, *superseding* Rev.Rul. 58–239, 1958–1 Cum.Bull. 94, 1958 WL 10354.

17. *Internal Revenue Service v. Energy Resources Co., Inc. (In re Energy Resources Co.)*, 871 F.2d 223, 227 (1st Cir.1989), *aff'd*, 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990).

18. *United States v. Pepperman*, 976 F.2d 123, 127 (3rd Cir.1992), *citing, Amos v. Commissioner*, 47 T.C. 65, 69, 1966 WL 1102 (1966)(Emphasis in *Pepperman*).

19. 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990).

20. *See In re Grand Valley Sport & Marine, Inc.*, 143 B.R. 840, 843 (Bankr.W.D.Mich. 1992)(Court considered the record as well as the stipulated facts in ruling on motion for summary judgment); *Landorf v. U.S.*, 187 Ct. Cl. 99, 408 F.2d 461 (1969)(Court considered the record as well as stipulated facts); *Brown v. Commissioner of Internal Revenue*, 1981 WL 11008 (U.S.Tax Ct.1981)(Same).

before confirmation and three years since confirmation. Many hearings have been held, and the court is quite familiar with the facts. The court may not, however, make any factual findings that are not contained within the stipulations or in the case record.

In *Energy Resources*, the Supreme Court dealt with two consolidated cases. In the first case, the Chapter 11 plan for Newport Offshore, Ltd. provided that any payments for employment taxes first would be applied to extinguish the trust fund portion of the employer's liability. The IRS's objection to that plan provision was the matter that reached the Supreme Court. In the second case, the plan approved for Energy Resources, Inc. did not contain such a provision, but when the trustee sent in the first payment, he requested that the money be applied to the trust fund liability. The IRS refused, and the trustee petitioned the bankruptcy court to enforce his request. The trustee's petition was granted. The First Circuit affirmed both bankruptcy court orders. The Supreme Court affirmed the First Circuit, and held that

> ... whether or not the payments at issue are rightfully considered to be involuntary, a bankruptcy court has the authority to order the IRS to apply the payments to trust fund liabilities if the bankruptcy court determines that this designation is necessary to the success of a reorganization plan.[21]

The Supreme Court, however, did not give any guidance as to when a bankruptcy court should exercise its authority to designate payments.[22]

There have been no Fifth Circuit cases since the *Energy Resources* decision that have considered the issue of whether a designation of trust fund taxes in Chapter 11 cases is appropriate, although there have been a few lower court decisions in the Fifth Circuit that have considered whether the *Energy Resources* decision applies to liquidating plans of reorganization.[23] The Compass plan is not a liquidating plan of reorganization, so the court need only consider whether Compass's requested designation of trust fund taxes is necessary to the success of the reorganization.

In the case of *In re Deer Park, Inc.*,[24] the responsible individual, Stoll, had participated in the liquidating plan pursuant to an understanding with the Creditors Committee that his personal liability for the unpaid trust fund taxes would be discharged by payments to the IRS under the plan. The plan did not provide for any allocation of trust fund taxes. The IRS claim was listed in an erroneous amount that was approximately $22,000 less than the correct amount. The IRS claim consisted of trust fund taxes and non-trust fund taxes. One month after the plan was confirmed, the IRS discovered the error but did nothing. The IRS collected all of the payments required by the plan, and then asked the responsible party to pay the shortfall resulting from the erroneous

---

**21.** 495 U.S. at 548–49, 110 S.Ct. at 2141–42.

**22.** *See In re Classic Chemical and Supply Co.*, 198 B.R. 112, 114 (Bankr.E.D.Pa.1996).

**23.** *See In re Poydras Manor, Inc.*, 242 B.R. 603, 607 (Bankr.E.D.La.2000)(Holding that bankruptcy court has the authority to order designation of trust fund payments in appropriate Chapter 11 liquidating plans); *In re*

*20th Century Enterprises, Inc.*, 1994 WL 779356 (Bankr.N.D.Miss. Jan.18, 1994)(same); *In re Laminating, Inc.*, 148 B.R. 259 (Bankr.S.D.Tex.1992)(Debtor who proposed liquidating Chapter 11 plan did not prove that designation of trust fund taxes was necessary to effectuate the plan).

**24.** 10 F.3d 1478, 1480 (9th Cir.1993).

listing of the IRS claim. The Creditors Committee filed a motion to require the IRS to apply the payments received under the plan first to Deer Park's trust fund tax liability so that Stoll's personal liability would be discharged. The Ninth Circuit affirmed the bankruptcy court's finding that Stoll's participation was essential to the success of the plan, and upheld the applicability of *Energy Resources* to Chapter 11 liquidating plans of reorganization.

Similarly, in the case of *In re Flo Lizer, Inc.*,[25] the debtor's principals participated in and contributed personal resources to the Chapter 11 liquidation plan. The participation was in reliance on an understanding with the IRS that the principals could avoid personal liability for trust fund taxes. The confirmed plan apparently did not have any provision as to the allocation of payments made to the IRS. Although the principals designated how the taxes should be allocated, the IRS did not follow the designation. The district court followed *Deer Park*, and affirmed the bankruptcy court's findings that the success of the plan was directly attributable to the principals' actions, and that the principals had participated based on an understanding that they would avoid personal liability for the debtor's trust fund taxes.

In this case, there is no evidence that the responsible parties participated in the plan based upon an understanding that they would avoid personal liability for Compass's trust fund taxes because of their participation, a factor that was present in both *Deer Park* and *Flo–Lizer*. That is not, however, the only factor to determine whether the designation is necessary to the success of the plan.

This case is similar to the facts before the bankruptcy judge in the *Energy Resources* case, whose decision was ultimately upheld by the Supreme Court.[26] The bankruptcy court in *Energy Resources* confirmed a plan in which a liquidating trust was established, the purpose of which was to liquidate all remaining assets of the debtors for the benefit of the creditors. The plan provided that the claims of the taxing authorities, including the IRS, were to be paid in full, but did not include a provision designating how the payments were to be applied. The trustee under the liquidating trust made payments to the IRS, and designated that the payments were to be applied first to trust fund taxes. The IRS did not follow the trustee's designation, and the trustee moved for an order directing the IRS to apply the plan payments as designated. The bankruptcy court analyzed extensively whether the payments were voluntary or involuntary. The bankruptcy court pointed out that the plan and tax payments in the case before it were made possible, at least in part, by the infusion of capital from a third party.[27] The bankruptcy court concluded that the payments were voluntary, and that the trustee had the right to direct the IRS to allocate the payments to the trust fund portion of taxes owed. The bankruptcy court disagreed with the IRS's position that an act is involuntary simply because it occurs in a bankruptcy proceeding. The bankruptcy court appeared to put the burden on the IRS to object to the plan, stating, "... the Court is mindful that the IRS had the opportunity to voice its concern with respect to the allocation issue at

---

**25.** 164 B.R. 749 (S.D.Ohio 1994).

**26.** *In re Energy Resources, Co.*, 59 B.R. 702 (Bankr.D.Mass.1986), *order affirmed*, 1987 WL 42960 (D.Mass. Aug 05, 1987), *judgment affirmed*, 871 F.2d 223 (1st Cir.1989), *judg-*

*ment affirmed, U.S. v. Energy Resources Co.,* 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990).

**27.** *In re Energy Resources*, 59 B.R. at 705–06.

the time of the confirmation hearing but did not do so.".[28]

The First Circuit opinion in *Energy Resources*, written by Judge Breyer before he was elevated to the Supreme Court, upheld the judgment of the bankruptcy court, but on different grounds. The First Circuit recognized that the courts were split over whether tax payments made pursuant to Chapter 11 reorganization were "voluntary" or "involuntary."[29] On that issue, the court held that

> We therefore accept [the IRS's] view that payments made pursuant to a Chapter 11 plan are "involuntary" for purposes of its own rules. That conclusion only means, however, that the *IRS's own rules and regulations* do not *compel* it to accept the taxpayers' determinations as to how it must apply payments here at issue.[30]

The court concluded, however, that the bankruptcy court had the power to order the IRS to apply an "involuntary" payment made by a Chapter 11 debtor first to trust fund taxes.[31] The First Circuit held that "the allocation question in a Chapter 11 case should be left to judicial discretion to be decided on a case-by-case basis."[32] The First Circuit stated:

> Specifically, the bankruptcy court should make the following inquiry: upon consideration of the reorganization plan as a whole, in so far as the particular structure or allocation of payments increases

the risk that the IRS may not collect the total tax debt, is that risk nonetheless justified by an offsetting increased likelihood of rehabilitation, *i.e.*, increased likelihood of payment to creditors who might otherwise lose their money?[33]

Several post-*Energy Resources* courts have considered this test.[34] In applying this test, the case of *In re Classic Chemical and Supply Co.*, stated that: "Subsequent case law formulating and applying standards for determining whether the criteria for allowance of a designation of tax payments have been met is surprisingly sparse."[35]

The court agrees that the case law is sparse as to defining a standard to be used in determining whether a designation of trust fund taxes is necessary to the success of a plan of reorganization in accordance with *Energy Resources*. Nevertheless, the present facts lead the court to conclude that the designation of Compass's liabilities to trust fund taxes is necessary to the success of Compass's reorganization plan. Conrad caused most of what was necessary for the success of the reorganization. The two pieces of real estate were sold before the plan was confirmed and resulted in the debtor's estate receiving the amount of $599,074.30. Applying this amount to the debtor's taxes significantly reduced the taxes owed to the IRS, and reduced the payments owed to creditors

---

**28.** 59 B.R. at 707.

**29.** *In re Energy Resources Co.*, 871 F.2d 223, 228 (1st Cir.1989), *affirmed*, 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990).

**30.** 871 F.2d at 229 [Emphasis in original].

**31.** 871 F.2d at 230.

**32.** 871 F.2d at 233.

**33.** 871 F.2d at 233–34.

**34.** *See In re Kaplan*, 104 F.3d 589, 598 (3rd Cir.1997)(Agreeing with the test of the First Circuit); *In re Classic Chemical and Supply Co.*, 198 B.R. at 114 (quoting the First Circuit decision and stating that "some guidance" may be derived from its test); *In re Baker*, 1996 WL 571764, at *9 (Bankr.N.D.Ind. 1996)(same); *In re R.L. Himes & Assoc.*, 152 B.R. 198, 203 (S.D.Ohio 1993)(Applying the test of the First Circuit).

**35.** 198 B.R. at 114.

under the plan. Before the plan confirmation, Conrad personally paid approximately $213,310.73 on account of Compass's tax debt.[36] Several related entities guaranteed the payments required of Compass under the plan.[37] Conrad and his son are working for the debtor at a salary that appears to be reasonable. Conrad's wife is working for the debtor, but will not be paid a salary until all of the debtor's creditors, except affiliates/insiders, have their claims fully satisfied.[38] All of these actions, particularly the sale of the real estate in order to reduce the taxes owed to the IRS, significantly increased the probabilities of success of the plan.

Using the test formulated by the First Circuit, the court finds that considering the Compass plan as a whole, particularly the provisions discussed in Finding of Fact # 22, whatever risk is posed to the IRS is justified by the increased likelihood that other creditors will be paid if Compass stays in business. The risk to the IRS of not collecting the total tax debt is justified by the increased likelihood of rehabilitation by Compass. Further, under the standard meaning of "necessary", the court concludes that the debtor's requested designation of trust fund taxes is necessary to the plan of reorganization. Accordingly, the court will enter judgment requiring the IRS to reallocate all of the payment of $599,074.30 to trust fund taxes.

### D. Voluntary/Involuntary Payments

Compass argues in the alternative that the payment of $599,074.30 was a voluntary payment derived from the voluntary sale of real estate. The IRS argues that the payment was involuntary both because it had tax liens against the property and

because the sales were pursuant to orders of the bankruptcy court.

Because the court has determined that the designation of the trust fund taxes requested by the debtor is necessary to the Chapter 11 reorganization, the court need not consider Compass's alternative argument.

---

**36.** Finding of Fact # 22.

