**In re F.G. METALS, INC., Metalfab of the Southwest, Inc., Debtors.**

**No. 8:06–bk–2108–PMG.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 16, 2008.

Scott A. Stichter, Stichter, Riedel, Blain & Prosser, Tampa, FL, for Debtors.

## ORDER ON UNITED STATES OF AMERICAS MOTION TO STAY CONSUMMATION OF THE CHAPTER 11 PLAN PENDING APPEAL

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing on April 8, 2008, to consider the Motion to Stay Consummation of the Chapter 11 Plan Pending Appeal. The Motion was filed by the United States of America (the United States).

On March 26, 2008, the United States filed a Notice of Appeal of the Order confirming the Chapter 11 Plan proposed by the Debtor, F.G. Metals, Inc. In the Motion presently under consideration, the United States asks the Court to stay consummation of the confirmed Plan during the pendency of the Appeal.

### Background

The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on May 3, 2006. The Debtor is engaged in the business of fabricating and installing architectural sheet metal on construction projects in western and central Florida.

On August 6, 2007, the Debtor filed its initial Chapter 11 Plan of Reorganization. (Doc. 206).

On February 20, 2008, the Debtor filed an Amended Plan of Reorganization. (Doc. 276).

Generally, the Amended Plan provides for two of its primary secured creditors, Branch Banking & Trust Company and Developers Surety, to receive monthly payments for a period of five years following the effective date of the Plan. (Doc. 276, Amended Plan, pp. 19–20).

With respect to the claim of the United States, the Amended Plan provides:

4.2   Class 2: Tax Lien Claims

4.2.1   As of the Effective Date, the Holder of Allowed Class 2 Claims shall retain the Lien securing such Claims to the extent of the Allowed Amount of such Tax Lien Claim.

4.2.2   All payments received by Holders of Tax Liens Claims shall be applied to liability for Trust Fund Taxes until Trust Fund Taxes have been paid in full.

4.2.3   The holder of Allowed Tax Lien Claims shall receive monthly payments in the amount of $6,000 commencing on the Effective Date of the Plan. In the event that any amounts are due to Holders of Allowed Tax Lien Claims, a balloon payment shall be made on April 30, 2011 in the amount of the balance owed on such claims. Interest shall accrue on the Tax Lien Claims at the rate established for delinquent tax obligations pursuant to 26 U.S.C. § 6621.

(Doc. 276, Amended Plan, pp. 18–19). The amount of the secured portion of the Claim filed by the United States is $551,795.63. (Claim Number 25–2).

The Amended Plan further provides that unsecured creditors shall receive twenty-five percent of their claims "with distribution of five percent (5%) per year for five (5) years without interest, payable annually, one, two, three, four and five years

after the Effective Date." (Doc. 276, Amended Plan, p. 21).

Finally, the Amended Plan provides that distributions under the Plan will be funded from "existing Cash and earnings from future profitable operation[s]." (Doc. 276, Amended Plan, p. 24).

The United States objected to confirmation of the Amended Plan. (Docs.272, 277).

In response to the United States' failure to accept the Plan, the Debtor filed a Motion for Confirmation under § 1129(b). (Doc. 273).

A hearing to consider confirmation of the Amended Plan was conducted on February 25, 2008. At the hearing, the Court received certain proffers of Debtor's counsel regarding the terms and implementation of the Amended Plan. The Court also received the testimony of George Frey, the Debtor's president, regarding the feasibility of the Amended Plan, and the effect that liquidation of the Debtor's assets would likely have on creditors and parties in interest.

On March 18, 2008, the Court entered an Order confirming the Debtor's Amended Plan. (Doc. 284).

On March 26, 2008, the United States filed a Notice of Appeal of the Order confirming the Amended Plan. (Doc. 294).

The United States also filed its Statement of Issues to be presented on Appeal. (Doc. 295). The issues identified by the United States are:

1. Whether the Bankruptcy Court erred in allowing debtor to make equal monthly payments for thirty-eight months, followed by a balloon payment of over $250,000.00 in the thirty-ninth month, under 11 U.S.C. § 1129(C), which requires "regular installment payments in cash."

2. Whether the Bankruptcy Court erred in determining that the proposed payment schedule is feasible.

3. Whether the Bankruptcy Court erred in ordering 100% allocation of payments made by debtor to be applied first to the trust fund recovery penalty portion of the IRS claim as necessary for the completion of the plan as required by *United States v. Energy Resources Co., Inc.,* 495 U.S. 545, 551, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990).

(Doc. 295, p. 5).

In the Motion presently under consideration, the United States asks the Court to stay consummation of the Amended Plan during the pendency of its Appeal. (Doc. 296).

**Discussion**

■ Rule 8005 of the Federal Rules of Bankruptcy Procedure provides in part:

**Rule 8005. Stay Pending Appeal**

... Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest....

F.R.Bankr.P. 8005. A motion for a stay pending appeal under Rule 8005 "is an extraordinary remedy and requires a substantial showing on the part of the movant." *In re Cusson,* 2008 WL 594456, at *2 (Bankr.D.Vt.)(quoting *In re Lickman,* 301 B.R. 739, 742 (Bankr.M.D.Fla.2003)).

■ The four-part standard to obtain a stay pending appeal under Rule 8005 is well-recognized.

The movant must clearly establish: (i) that the movant is likely to prevail on the merits of its appeal, (ii) that the

movant will suffer irreparable injury if a stay or other injunctive relief is not granted, (iii) that other parties will suffer no substantial harm if a stay or other injunctive relief is granted, and (iv) in circumstances where the public interest is implicated, that the issuance of a stay or other injunctive relief will serve, rather than disserve, such public interest.

*In re Jet 1 Center, Inc.*, 2006 WL 449252, at \*1 (M.D.Fla.2006)(quoting *Tooke v. Sunshine Trust Mortgage Trust*, 149 B.R. 687, 689 (M.D.Fla.1992)) (quoting *In re Charter Co.*, 72 B.R. 70, 71–72 (Bankr. M.D.Fla.1987)).

■ The party requesting the stay must show satisfactory evidence on all four criteria. *In re Davis*, 373 B.R. 207, 210 (Bankr.N.D.Ga.2007). The criteria must be established by a preponderance of the evidence. *In re Smithers*, 2005 WL 4030095, at \*1 (Bankr.S.D.Ohio 2005).

■ The moving party's likelihood of prevailing on the merits of its appeal is generally the most important of the four criteria identified above, and the Court must ordinarily find that the appealed decision was clearly erroneous. *Antonio v. Bello*, 2004 WL 1895123, at \*1 (11th Cir.). "A finding that the movant demonstrates a probable likelihood of success on the merits on appeal requires that we determine that the trial court below was clearly erroneous." *Garcia–Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir.1986).

■ According to the Eleventh Circuit Court of Appeals, however, if the party requesting a stay pending appeal is unable to show that the challenged decision was clearly erroneous, he may nevertheless obtain relief by establishing that the three remaining criteria "tend strongly" in his favor. *Antonio v. Bello*, 2004 WL 1895123, at \*1. In other words, "[a]lthough the appellant must typically show that success on

the merits is 'likely' or 'probable,' a stay may nevertheless be issued where the appellant demonstrates that his or her chances of success are merely 'substantial' so long as a strong showing weighing heavily in the appellant's favor is made on the latter three elements." *In re Rabin*, 2007 WL 1098785, at \*1 (Bankr.S.D.Fla. 2007).

■ Applying the Eleventh Circuit's standard to this case, the Court determines that the United States has not satisfied its burden of establishing the four criteria by the required degree of proof.

### A. Likelihood of success on appeal

The United States has not shown that it is likely to prevail on any of the three issues set forth in its Statement of Issues to be Presented on Appeal.

#### 1. "Regular installment payments"

■ First, the United States contends that the Court erred by confirming the Debtor's Amended Plan, even though the Amended Plan contains a provision for the United States to receive payments in the amount of $6,000.00 per month until March of 2011, followed by a balloon payment in the approximate amount of $250,000.00 on April 20, 2011. According to the United States, such a payment schedule is prohibited by § 1129(a)(9)(C) of the Bankruptcy Code.

Section 1129(a)(9) provides in part:

**11 U.S.C. § 1129. Confirmation of plan**

(a) The court shall confirm a plan only if all of the following requirements are met:

. . .

(9) Except to the extent that the holder of a particular claim has agreed to a

different treatment of such claim, the plan provides that—

. . .

(C) with respect to a claim of a kind specified in section 506(a)(8) of this title, the holder of such claim will receive on account of such claim *regular installment payments in cash*—

(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; . . .

11 U.S.C. § 1129(a)(9)(C)(Emphasis supplied). The phrase "regular installment payments in cash" was added as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) to replace a previous phrase that required "deferred cash payments over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim."

It appears that no reported decisions have interpreted the phrase "regular installment payments in cash" since the enactment of BAPCPA in 2005. At the confirmation hearing in this case, however, the Court determined that the phrase requires, as it states, "regular" installment payments, as distinguished from other provisions in the Bankruptcy Code that require "equal" installment payments. (Doc. 296, p. 7).

The United States asserts that the new phrase was intended to prohibit arrangements whereby a tax creditor receives proportionately small payments early in the life of a confirmed plan, followed by a balloon payment at the end of the payment term. (Doc. 296, pp. 6–7). To support its contention in this regard, the United States cites "dicta" contained in *In re Dow Corning Corp.*, 244 B.R. 718 (Bankr. E.D.Mich.1999), and a quote from a House Report, H.R.Rep. No. 106–123, pt. 1, at 160 (1999), both of which predated the actual amendment by six years.

The excerpt from the House Report quoted by the United States provides that the proposed legislation requires "that these claims must be paid in cash by regular installment payments, not longer than three months apart, that begin on the plan's effective date. *This provision specifically prohibits balloon payments.*" (The emphasis was supplied by the United States in its Motion and Memorandum of Law.)(Doc. 296, p. 6). The House Report quoted by the United States is a report relating to the "Bankruptcy Reform Act of 1999," however, and not the "Bankruptcy Abuse Prevention and Consumer Protection Act of 2005." While these two pieces of legislation had much in common, they also had differences. The provisions cited by the United States in the proposed Bankruptcy Reform Act of 1999, for example, were different from the corresponding provisions adopted in BAPCPA in 2005. The 1999 proposed Act provided:

SEC. 810. PERIODIC PAYMENT OF TAXES IN CHAPTER 11 CASES.

Section 1129(a)(9) of title 11, United States Code, is amended-

. . .

(A) by striking "deferred cash payments, over a period not exceeding six years after the date of assessment of such claim," and inserting "regular installment payments in cash, but *in no case with a balloon provision, and no more than three months apart, beginning no later than the effective date of the plan* and *ending on the earlier of* five years after the petition date or the

last date payments are to be made under the plan to unsecured creditors,"... H.R.Rep. No. 106–123, Sec, 810.(Emphasis supplied). Further, a separate quote in the United States' Motion and Memorandum of Law from H.R.Rep. No. 105–540 refers to the "Bankruptcy Reform Act of 1998," which contained provisions similar to the 1999 proposed Act. These excerpts quoted by the United States, however, refer to provisions in proposed legislation that were not enacted into law.

Instead, the provisions that were enacted and became law in BAPCPA in 2005 require "regular installment payments" but do not contain the prohibition against balloon payments. The House Report for BAPCPA, for example, states that "Section 710 of the Act amends section 1129(a)(9) of the Bankruptcy Code to provide that the allowed amount of priority tax claims (as of the plan's effective date) must be paid in regular cash installments within five years from the entry of the order for relief" H.R.Rep. No. 109–31. Sec. 710. The prohibition against balloon payments does not appear in the House Report for BAPCPA. Additionally, the relevant provisions of BAPCPA, as enacted, provide:

11 U.S.C. § 1129. Confirmation of plan

. . .

(C) with respect to a claim of a kind specified in section 506(a)(8) of this title, the holder of such claim will receive on account of such claim *regular installment payments in cash*—

(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; . . .

11 U.S.C. § 1129(a)(9)(C)(Emphasis supplied).

Accordingly, based on the complete legislative history and § 1129(a)(9)(C) as enacted in BAPCPA, it appears that the prohibition against balloon payments was actually considered and rejected by Congress.

Additionally, the amendments of BAPCPA in 2005 added a phrase relating to periodic payments in Chapter 13 cases, requiring certain periodic payments to be in "equal monthly amounts." Section 1325 of the Bankruptcy Code sets forth the requirements for confirmation of a Chapter 13 plan, and subsection (a)(5) of that section relates to the required treatment of secured claims under such plans. Generally, if the debtor wishes to retain the property secured by the claim, and the claimant has not accepted the plan, the plan must provide for the creditor to retain its lien on the property, and receive distributions in an amount that is not less than the allowed amount of the claim. In the 2005 Act, Congress added the provision that if the distributions are in the form of periodic payments, "such payments shall be in *equal* monthly amounts." 11 U.S.C. § 1325(a)(5)(B)(iii)(Emphasis supplied). Consequently, when a chapter 13 debtor proposes to pay a secured claim in periodic payments under § 1325(a)(5), those payments must be in equal monthly amounts. *In re Sanchez*, 384 B.R. 574, 577 (Bankr. D.Or.2008).

Significantly, it appears that § 1325(a)(5)(B) was designed to address the issues presented by balloon payments and other potential abuses in chapter 13 plans.

Changes in Section 1325(a)(5)(B) requiring adequate protection and equal monthly payments were intended by Congress to address two perceived abus-

es. First, because adequate protection payments were not explicitly required under prior law, unscrupulous debtors could propose plans that allowed them to use collateral for months without making payments (i.e. a moratorium on payments), then convert to Chapter 7 or move to modify their plan to surrender the collateral at a significantly depreciated value. Second, by requiring equal monthly payments over the life of a Chapter 13 plan (unless the secured claim is paid earlier), debtors cannot propose plans with a balloon payment at the end. (Citations omitted.) ... Requiring, first, that adequate protection payments begin as soon as the case is filed and, second, that equal monthly payments provide adequate protection, will prevent creditors secured by personal property from suffering the economic consequences of the moratorium plans and the balloon plans.

*In re Hill*, 2007 WL 499622, at *7 (Bankr. M.D.N.C.).

The point illustrated by this passage, of course, is that Congress dealt with the issue of balloon payments in the context of chapter 13 cases, and included specific language in § 1325(a)(5)(B) that required the payment of *"equal* monthly amounts" to certain secured creditors under the plans. At the same time, Congress dealt with the issue in the Chapter 11 context, and required only "regular installment payments."

■ A statute should be read according to its plain meaning, where possible. *In re Fretz*, 244 F.3d 1323, 1327 (11th Cir.2001). In this case, § 1129(a)(9)(C) provides that holders of certain tax claims shall receive "regular installment payments in cash." The section does not provide that the payments shall be in equal amounts throughout the life of the plan. Had Congress intended to impose such a requirement, it

certainly knew how to do so, as evidenced by its addition in the same legislation of the requirement in § 1325(a)(5)(B) that certain distributions under chapter 13 plans be in "equal monthly amounts."

The United States has not shown that it is likely to prevail on the merits of its appeal with respect to its claim that § 1129(a)(9)(C) prohibits balloon payments of the type provided by the Debtor's Amended Plan.

## 2. Feasibility

Second, the United States contends that the Court erred by determining that the Debtor's Amended Plan is feasible.

■ "Whether a plan is feasible is a question of fact, subject to the clearly erroneous standard on appeal from an order confirming the plan." *In re Investment Company of the Southwest, Inc.*, 341 B.R. 298, 310 (10th Cir.BAP2006). See also *Corestates Bank, N.A. v. United Chemical Technologies, Inc.*, 202 B.R. 33, 45 (E.D.Pa.1996)("Feasibility is a factual question subject to the clearly erroneous standard of review.").

■ Further, in determining that a Chapter 11 plan is feasible, the Court is not required to find that the success of the plan is guaranteed. *In re Sea Garden Motel and Apartments*, 195 B.R. 294, 304 (D.N.J.1996). Instead, the Bankruptcy Court is granted considerable latitude in determining the feasibility of a Plan.

At bottom, it is clear that the feasibility inquiry is peculiarly fact intensive and requires a case by case analysis, using as a backdrop the relatively low parameters articulated in the statute. In this respect, however, it is clear that there is a relatively low threshold of proof necessary to satisfy the feasibility requirement.

*In re Sea Garden Motel and Apartments,* 195 B.R. at 305(quoting *In re Eddington Thread Mfg. Co., Inc.,* 181 B.R. 826, 832–33 (Bankr.E.D.Pa.1995)). The bankruptcy court is only required to find that a plan offers a reasonable probability of success, and a plan may be confirmable even if the debtor's projections are aggressive and do not view all business prospects in the worst possible light. *In re T–H New Orleans Limited Partnership,* 116 F.3d 790, 801–02 (5th Cir.1997).

In this case, the Court received the testimony of the Debtor's president, George Frey, regarding the feasibility of the Amended Plan. (Doc. 284, ¶ 16). The Court also received into evidence the Debtor's Pro Forma Projection of income and expenses for the five-year period beginning on January 1, 2008, and ending on December 31, 2012. (Doc. 280). The Pro Forma reflects a net profit earned by the Debtor in each of the five years projected, with the projected profits sufficient to pay both secured and unsecured creditors under the Amended Plan. Finally, the Court considered the Debtor's Monthly Operating Reports filed in accordance with the Guidelines established by the United States Trustee. The Reports filed with the Court were current as of the date of the confirmation hearing. (Doc. 275).

Under these circumstances, the United States has not shown that it is likely to prevail on the merits of its appeal with respect to the feasibility of the Debtor's Amended Plan. As shown above, the Debtor was only required to establish a reasonable probability of success, not a guarantee of success. The Court received testimony and documentary evidence, and made the factual determination that the Amended Plan is feasible. On appeal, the United States is not likely to show that the determination is clearly erroneous.

### 3. Allocation to Trust Fund

Third, the United States asserts that the Court erred in allowing the Debtor to allocate its payments first "to Trust Fund Taxes until Trust Fund taxes have been paid in full." (Doc. 272, ¶ 7). According to the United States, such an allocation is only permissible if the designation is necessary to the completion of a plan. *United States v. Energy Resources Co., Inc.,* 495 U.S. 545, 551, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990).

The Debtor acknowledges that "bankruptcy courts may order the IRS to apply taxes in [a] prescribed manner only when necessary for a reorganization's success." (Doc. 278, ¶ 15). The Debtor contends, however, that the allocation is justified in this case because the continued involvement of the Debtor's principals is necessary to the success of its reorganization, and the principals cannot continue their contributions to the Debtor if payments under the Plan are not allocated to the Trust Fund, (Doc. 278, ¶ 17).

Little guidance is available to assist a Court in determining whether an allocation is necessary to the completion of a particular plan. *In re Compass Marine Services, Inc.,* 276 B.R. 765, 770–72 (Bankr.E.D.La. 2002); *In re Oyster Bar of Pensacola, Inc.,* 201 B.R. 567, 569 (Bankr.N.D.Fla.1996).

■ Generally, however, Courts seek to determine whether the risk to the Internal Revenue Service of not collecting the total amount of its debt is justified by the increased likelihood that the debtor will successfully reorganize if the allocation is allowed. *In re Compass Marine Services,* 276 B.R. at 773. In other words, Courts "balance the interests of the IRS in collecting its debt against the interests of promoting the debtor's successful reorganization." *In re Oyster Bar of Pensacola.* 201 B.R. at 569.

In applying this general standard, Courts have found in other cases that the risk to the IRS of nonpayment was justified where the contributions of a debtor's principal significantly increased the probability of success of the plan. *In re Compass Marine Services*, 276 B.R. at 773. In *In re Poydras Manor, Inc.*, 242 B.R. 603, 608 (Bankr.E.D.La.2000), for example, the Court found that the participation in the plan by the debtor's principals was essential for a maximum recovery by all creditors, with the result that the plan's designation of payments to the Trust Fund was necessary to the success of the plan.

In this case, George Frey testified as to the basis for designating payments to the Trust Fund portion of the tax claim, and the Court expressly found that the allocation was necessary to the success of the reorganization. (Doc. 284, pp. 5, 9).

■ The Court is not required to make specific findings regarding the necessity of the allocation. It must only reach a conclusion that the allocation is necessary. *In re Oyster Bar of Pensacola*, 201 B.R. at 569.

The United States has not shown that it is likely to prevail on the merits of its appeal with respect to the allocation issue. The standard for determining the propriety of the allocation is flexible, and evidence was presented in this case to demonstrate that the designation is justified by the participation of the Debtor's principals in the Debtor's Amended Plan.

## B. Irreparable injury

To establish the second criterion for a stay pending appeal under Rule 8005, the United States must show that it will suffer irreparable injury if the stay is not granted.

■ To satisfy this criterion, the party seeking the stay "generally must show that legal remedies (i.e., money damages) are inadequate to protect it during the pendency of the appeal." *In re Cusson*, 2008 WL 594456, at *3 (Bankr.D.Vt. 2008).

> The irreparable harm must be "neither remote nor speculative, but actual and imminent." (Citations omitted). "Mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough."

*In re Lickman*, 301 B.R. 739, 748 (Bankr.M.D.Fla.2003)(quoting *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir.1987)) (quoted in *In re Cusson*, 2008 WL 594456, at *3.). See also *In re Smithers*, 2005 WL 4030095, at **3–4 (Bankr. S.D.Ohio 2005)(Injury is irreparable only if it is not compensable by monetary damages.)

In this case, the United States asserts that it will suffer irreparable injury if the stay is not granted, because its appeal may become moot if the Debtor consummates its Amended Plan. (Doc. 296, pp. 8–9).

■ It appears that a majority of Courts have held that "the risk that an appeal may become moot does not by itself constitute irreparable injury." *In re Fullmer*, 323 B.R. 287, 304 (Bankr.D.Nev.2005)(collecting cases). In *In re Goss*, 2008 WL 824303, at *2 (Bankr. E.D.Okla.), for example, the Court found that "the fact that an appeal may be rendered moot without a stay does not itself constitute irreparable harm." *In re Goss*, 2008 WL 824303, at*2(quoting *In re Sunflower Racing, Inc.*, 223 B.R. 222, 225 (D.Kan.1998)). See also *In re The Charter Company*, 72 B.R. 70, 72 (Bankr.M.D.Fla. 1987)(The contention that an appeal may be rendered moot is insufficient to establish irreparable injury.)

The United States has not asserted any basis other than mootness for claiming that it will be irreparably injured if the stay is not granted. Further, the United States has not demonstrated that its alleged injury would not be compensable by monetary damages. Under these circumstances, the Court finds that the United. States has not established that it will suffer irreparable injury if its Motion for Stay Pending Appeal is not granted.

## C. Harm to other parties

To establish the third criterion for a stay pending appeal under Rule 8005, the United States must show that other parties will suffer no substantial harm if a stay is granted.

The United States contends that "the only harm resulting from a motion to stay is that payments to creditors may be delayed pending resolution of the appeal." (Doc. 296, p. 9).

■■■ Significant delay in the administration of an estate, however, generally satisfies the criterion of harm to other parties. *In re Lickman*, 301 B.R. at 748(citing *In re Bob Hamilton Real Estate*, 164 B.R. 703, 705 (Bankr.M.D.Fla. 1994) and *In re Bilzerian*, 264 B.R. 726, 735 (Bankr.M.D.Fla.2001)).

Delay in the distribution to creditors under a plan constitutes "substantial harm to other parties." *In re Baker*, 2005 WL 2105802, at *10 (E.D.N.Y.2005). See also *In re Salvo*, 2008 WL 938585, at *4 (Bankr.N.D.Ohio 2008)(A "stay could injure all creditors by delaying their potential payments through a confirmed Chapter 13 plan.") and *In re The Charter Company*, 72 B.R. at 72(Claimants will "suffer substantial harm as a result of a stay because of the resulting delay in their receipt of settlement funds.").

In this case, it is clear that the entry of an Order staying consummation of the Debtor's Amended Plan will delay all payments to the Debtor's creditors under the Plan. The United States has not established that other parties will suffer no substantial harm if a stay is granted.

## D. Public interest

To establish the fourth criterion for a stay pending appeal under Rule 8005, the United States must show that the issuance of a stay will serve, rather than disserve, the public interest.

The United States contends that there is a risk inherent in the Debtor's Amended Plan, because the Debtor's operations may fail after five years, leaving most of the Debtor's obligations unpaid. Consequently, the United States asserts that "the public interest in enforcing the tax laws of the United States is met by granting the motion to stay and permitting the United States to proceed with an appeal." (Doc. 296, pp. 9–10).

■■■ There is, however, a "great public policy" in ensuring that bankruptcy cases continue to "an orderly, efficient resolution to maximize and preserve the estate's assets." *In re Lickman*, 301 B.R. at 749(quoting *In re Bankruptcy Appeal of Allegheny Health. Education and Research Foundation*, 252 B.R. 309, 331 (W.D.Pa.1999)). "The Bankruptcy Code engenders a vital public policy of providing businesses an opportunity to 'start anew.' " *Continental Securities Corp. v. Shenandoah Nursing Home Partnership*, 188 B.R. 205, 211 (W.D.Va.1995). There is a recognized public interest in allowing a Chapter 11 debtor an opportunity to implement its confirmed plan.

Under all of the circumstances of this case, the Court finds that the United States has not established that the issu-

ance of the stay will serve the public interest.

### Conclusion

The United States is requesting that the Court stay consummation of the Debtor's Amended Chapter 11 Plan while it appeals the Order confirming the Plan. The Motion for a stay pending appeal should be denied.

The United States has not satisfied its burden of establishing the four criteria that are required for the entry of a stay under Rule 8005 of the Federal Rules of Bankruptcy Procedure.

First, the United States has not shown that it is likely to prevail on the merits of its appeal. Specifically, it has not shown that it is likely to prevail (1) on its claim that § 1129(a)(9)(C) prohibits balloon payments of the type provided in the Debtor's Amended Plan; (2) on its claim that the Amended Plan is not feasible; or (3) on its claim that the allocation of payments to the Trust Fund portion of the tax liability is not necessary for the completion of the Amended Plan.

Second, the United States has not shown that it will suffer irreparable injury if the stay is not granted. The potential mootness of the appeal is insufficient to establish irreparable injury, and the United States has not shown that its alleged injury would not be compensable by monetary damages.

Third, the United States has not shown that other parties will suffer no substantial harm if a stay is granted. The entry of an Order staying consummation of the Amended Plan will clearly delay payment to the Debtor's other creditors.

Fourth, the United States has not shown that the issuance of a stay will serve the public interest.

Accordingly:

**IT IS ORDERED** that the Motion to Stay Consummation of the Chapter 11 Plan Pending Appeal, filed by the United States of America, is denied.